**SEALED**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2011 JUL -8  PM 3: 42

DEPUTY CLERK _RR_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL], ) ) ) | |
| Plaintiff ) ) | No. 2:11CV165-J |
| vs. ) ) | **FILED IN CAMERA AND UNDER SEAL** |
| [UNDER SEAL], ) ) | |
| Defendants ) | (31 USC §3750(b)(2)&(3)) |

## COMPLAINT PURSUANT TO 31 U.S.C. §3730

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Tom Proctor and Michael O'Grady, ) | |
| Individually and on behalf of, the ) | |
| UNITED STATES OF AMERICA, ) | NO. CIV - |
| STATE OF ARKANSAS ) | FILED IN CAMERA AND UNDER |
| STATE OF CALIFORNIA, ) | SEAL, (31 USC §3750(b)(2)&(3)) |
| STATE OF DELAWARE, ) | |
| DISTRICT OF COLUMBIA, ) | |
| STATE OF FLORIDA, ) | |
| STATE OF GEORGIA, ) | |
| STATE OF ILLINOIS, ) | |
| STATE OF LOUISIANA, ) | |
| COMMONWEALTH OF MASSACHUSETTS) | |
| STATE OF MICHIGAN, ) | |
| STATE OF NEW JERSEY, ) | |
| STATE OF NEVADA, ) | |
| STATE OF OKLAHOMA, ) | |
| STATE OF TENNESSEE, ) | |
| STATE OF TEXAS, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| 1) Universal Health Services, Inc. (UHS); ) | |
| 2) Baxter Internation, Inc. (BAX); ) | |
| 3) Astellas Pharma US, Inc.; ) | |
| 4) Hospira, Inc. (HSP); ) | |
| 5) Amerisource Bergen, Corp. (ABC); ) | |
| 6) Sanofi-Aventis (SNY); ) | |
| 7) Merck and Co., Inc. (MRK); ) | |
| 8) Astra Zeneca (AZN); ) | |
| 9) Centrocor Ortho Bioteck, Inc.; ) | |
| 10) Phil Polillo ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT PURSUANT TO 31 U.S.C. §3730

**HAYES LEGAL GROUP, P.C.**
Gaylon C. Hayes
OK Bar No. 14492
TX Bar No. 24071384
Federal Bar No. 73945
6805 South Western, Suite 500
Oklahoma City, Oklahoma  73139
Tel:  (405) 616-5045
Fax:  (405) 616-5062

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... iv

I.      PARTIES ........................................................................ 1

II.     FILING UNDER SEAL ............................................... 8

III.    JURISDICTION AND VENUE .................................... 8

IV.     PLAINTIFF'S DIRECT AND INDEPENDENT KNOWLEDGE AND
VOLUNTARY DISCLOSURE OF THE DEFENDANT'S FRAUDULENT
CONDUCT TO THE UNITED STATES ..................................... 10

V.      PRELIMINARY STATEMENT OF DEFENDANTS' FRAUDULENT
CONDUCT AND CIRCUMSTANCES ....................................... 11

VI.     OTHER PERTINENT FACTS ...................................... 42

VII.    THE UNITED STATES HAS BEEN DAMAGED ........... 43

VIII.   THE NAMED STATES HAVE BEEN DAMAGED ......... 43

IX.     RELATORS CAUSES OF ACTION ............................. 44

  FEDERAL FALSE CLAIMS ACT 31 U.S.C. § 3729(A)(1)(A) .............. 44

  FEDERAL FALSE CLAIMS ACT U.S.C. § 3729(A)(1)(B) ................... 45

  FEDERAL FALSE CLAIMS ACT U.S.C. § 3729(A)(1)(C) ................... 46

  FEDERAL FALSE CLAIMS ACT U.S.C. § 3729(A)(1)(G) .................. 47

  CLAIM BY THE UNITED STATES FOR UNJUST ENRICHMENT ............. 49

  CLAIM BY THE UNITED STATES FOR UNJUST ENRICHMENT ............. 49

  CLAIM BY THE UNITED STATES FOR UNJUST ENRICHMENT ............. 50

  CLAIM BY THE UNITED STATES FOR PAYMENT BY MISTAKE .............. 50

  CLAIM BY THE UNITED STATES FOR PAYMENT BY MISTAKE .............. 51

  CLAIM BY THE UNITED STATES FOR PAYMENT BY MISTAKE .............. 51

  ARKANSA FALSE CLAIMS ................................................ 52

  CALIFORNIA FALSE CLAIMS ACT ....................................... 54

  DELAWARE FALSE CLAIMS AND REPORTING ACT ...................... 56

  DISTRICT OF COLUMBIA FALSE CLAIMS ACT ......................... 57

  FLORIDA FALSE MEDICAID CLAIMS ACT ............................... 59

**GEORGIA FALSE CLAIMS ACT** ............................................................ 60

**ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT** ... 62

**LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGITY LAW** 63

**MASSACHUSETTS FALSE CLAIMS ACT** ........................................... 65

**MICHIGAN FALSE CLAIMS ACT** ...................................................... 67

**NEVADA FALSE CLAIMS ACT** ......................................................... 68

**NEW JERSEY FALSE CLAIMS ACT** ................................................. 70

**OKLAHOMA MEDICAID FALSE CLAIMS ACT** ............................... 71

**TENNESSEE FALSE CLAIMS ACT** .................................................... 73

**TEXAS MEDICAID FRAUD PREVENTION ACT** .............................. 74

**X.     PRAYER FOR RELIEF** .............................................................. 77

**XI.    REQUEST FOR TRIAL BY JURY** ............................................ 77

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Tom Proctor and Michael O'Grady,<br>Individually and on behalf of, The UNITED<br>STATES OF AMERICA,<br>STATE OF ARKANSAS<br>STATE OF CALIFORNIA,<br>STATE OF DELAWARE,<br>DISTRICT OF COLUMBIA,<br>STATE OF FLORIDA,<br>STATE OF GEORGIA,<br>STATE OF ILLINOIS,<br>STATE OF LOUISIANA,<br>COMMONWEALTH OF MASSACHUSETTS)<br>STATE OF MICHIGAN,<br>STATE OF NEW JERSEY,<br>STATE OF NEVADA,<br>STATE OF OKLAHOMA,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS,<br><br><br>          Plaintiffs,<br>vs.<br><br>1) Universal Health Services, Inc. (UHS);<br>2) Baxter Internation, Inc. (BAX);<br>3) Astellas Pharma US, Inc.;<br>4) Hospira, Inc. (HSP);<br>5) Amerisource Bergen, Corp. (ABC);<br>6) Sanofi-Aventis (SNY);<br>7) Merck and Co., Inc. (MRK);<br>8) Astra Zeneca (AZN);<br>9) Centrocor Ortho Bioteck, Inc.;<br>10) Phil Polillo, Individually and as an<br>Officer Of UHS<br><br>          Defendants. | NO. CIV -<br><br>FILED IN CAMERA AND UNDER<br>SEAL (31 USC §3750(b)(2)&(3)) |

vi

## COMPLAINT PURSUANT TO 31 U.S.C. §3730

**COMES NOW,** the Relators, Tom Proctor and Michael O'Grady, and for their Complaint pursuant to 31 U.S.C § 3730, et seq., under seal, and states as follows:

## I.    PARTIES

1)    The Plaintiff/Relator, Tom Proctor, is an individual currently residing in Denton, Texas. He was employed by UHS from May of 2005 until June of 2008 as a director of Pharmacy at the St. Mary's Hospital located in Enid Oklahoma. He was specifically instructed by Phil Polillio from UHS Corporate on his drug purchasing activity and the events presented in this complaint. As a director of Pharmacy, he gained independent and personal knowledge of the information provided in the following complaint.

2)    The Plaintiff/Relator, Michael O'Grady, is an individual currently residing in Ada, Oklahoma. He was employed by UHS from 2005 until June of 2009 as a director of Pharmacy at the North West Texas Hospital located in Amarillo, Texas. During his employment, he was specifically instructed by Phil Polillio from UHS Corporate on his drug purchasing activity and the events presented in this complaint. Mr. O'Grady was also a member of UHS's general Pharmacy Advisory Council and attended meetings discussing pharmacy policy and control in that role. Both his position as a director of Pharmacy and his work on the Pharmacy Advisory Council

(PAC) earned him the independent and personal knowledge of the information provided in the following complaint.

3)   The Defendant, Universal Health Services, Inc. (UHS), is a publically held company on the New York Securities Exchange, and through its subsidiaries, owns and operates acute care hospitals, behavioral health centers, surgical hospitals, ambulatory surgery centers, and radiation oncology centers.  The Company owned and/or operated or had under construction, 25 acute care hospitals and 102 behavioral health centers located in 32 states, Washington D.C., and Puerto Rico. As part of the ambulatory treatment centers division, the Company manages and/or owns outright or in partnerships with physicians, 7 surgical hospitals and surgery and radiation oncology centers located in 5 states and Puerto Rico.  The address and principle place of business for Universal Health Services, Inc. is:   Universal Corporate Center 367 South Gulph Road, King Prussia, PA 19406.

a)   The following is a list of the names and locations of the Acute Care Hospitals, owned and run by UHS, which received at least one of the drugs pertinent to this case. *See* Exhibit 1.

   i)     St. Mary's Hospital, Enid Oklahoma

   ii)    Northwest Texas Hospital, Amarillo Texas

   iii)   Aiken Regional Medical Center, Aiken South Carolina

   iv)    Auburn Regional Medical Center, Auburn Washington

   v)     Centennial Hills Hospital Medical Center, Las Vegas Nevada

   vi)    Corona Regional Medical Center, Corona California

2

vii)   Desert Springs Hospital Medical Center, Las Vegas Nevada

viii)   Doctors Hospital of Laredo, Laredo Texas

ix)   Fort Duncan Regional Medical Center, Eagle Pass Texas

x)   Inland Valley Medical Center, Wildomar California

xi)   Lakewood Ranch Medical Center, Bradenton Florida

xii)   Manatee Memorial Hospital, Bradenton Florida

xiii)   Northern Nevada Medical Center, Sparks Nevada

xiv)   Palmdale Regional Medical Center, Palmdale California

xv)   Ranch Springs Medical Center, Murrieta California

xvi)   South Texas Health System, Edinburg Texas

xvii)   Spring Valley Hospital Medical Center, Las Vegas Nevada

xviii) Summerlin Hospital Medical Center, Las Vegas Nevada

xix)   Texoma Medical Center, Denison Texas

xx)   The George Washington University Hospital, Washington D.C.

xxi)   Valley Hospital Medical Center, Las Vegas Nevada

xxii)   Wellington Regional Medical Center, West Palm Beach Florida

b) The following is a list of the names and locations of the Behavioral Health Care Facilities, owned and run by UHS, which received at least one of the drugs pertinent to this case. *See* Exhibit 1.

i)   Anchor Hospital, Atlanta Georgia

ii)   Del Amo Hosptial, Torrance California

iii)   Fairmount Behavioral Health System, Philadelphia Pennsylvania

3

iv)    Forest View Hospital, Grand Rapids, Michigan

v)     Glen Oaks Hospital, Greenville Texas

vi)    Hampton Behavioral Health Center, Westampton New Jersey

vii)   Hartgrove Hospital, Chicago Illinois

viii)  Lakeside Behavioral Health System, Memphis Tennessee

ix)    Meridell Achievement Center, Liberty Hill Texas

x)     Parkwood Behavioral Health System, Olive Branch Mississippi

xi)    Peachford Hospital, Atlanta Georgia

xii)   Pembroke Hospital, Pembroke Massachusetts

xiii)  Rivendell Behavioral Health Services of Arkansas, Benton Arkansas

xiv)   River Crest Hospital, San Angelo Texas

xv)    River Oaks Hospital, New Orleans Louisiana

xvi)   Rockford Center, Newark Delaware

xvii)  South Texas Behavioral Health System, Edinburg Texas

xviii) Spring Mountain Treatment Center, Las Vegas Nevada

xix)   The Bridgeway, North Little Rock Arkansas

xx)    The Carolina Center for Behavioral Health, Greer South Carolina

xxi)   The Pavillion Foundation, Champaign Illinois

xxii)  Timberlawn Mental Health System, Dallas Texas

xxiii) Two Rivers Psychiatric Hospital, Kansas City Missouri

xxiv)  Westwood Lodge, Westwood Massachusetts

4)  Amerisource Bergen Corp (ABC), is a global market pharmaceutical services provider. The company works with manufacturers of branded pharmaceuticals, generic pharmaceuticals, biotech and specialty drugs, over the counter remedies, and health and beauty aids. They service independent retail pharmacies, national· and regional chains, hospitals, clinics, pharmacy benefit facilities, and physician offices. The corporate address is: Amerisource Bergen Corporation, P.O. Box 959, Valley Forge, Pennsylvania 19482.

5)  Defendant, Baxter International, Inc. (BAX), is a broad-based healthcare products distributor, as well as, a developer of medical technologies it is a Global Healthcare Exchange which is an independent company that facilitates the exchange of information related to buying, selling, and distributing medical equipment, devices, and healthcare products and related services to a worldwide market. The address and principle place of business for Baxter International, Inc. is:   Baxter International, Inc., One Baxter Parkway, Deerfield, Illinois 60015.

6)  Defendant Astellas Pharma US, Inc., is the United States affiliate of Astellas Pharma, Inc., Japan's second largest pharmaceutical company and is ranked with the top 20 in the global market. The Company has a global reach in North America. It became a leading biotech in therapeutic antibody research and development in cancer, as well as, therapeutics for use in radionuclide myocardial perfusion imaging when it acquired Agensys, Inc. Many of its products are used in the therapeutic areas of cardiology, dermatology, immunology, infectious disease, neuroscience, and urology. The corporate address and principle place of business in

5

the U.S. for Astellas Pharma US, Inc.:  Astellas Pharma US, Inc., U.S. affiliate of

Astellas Pharma, Inc., Three Parkway North, Deerfield, Illinois 6—15-2548.

7)   Hospira, Inc. (HSP), is a global specialty pharmaceutical and medication delivery

company.  Its common stock is listed on the New York Stock Exchange under the

symbol "HSP".  They specialize in generic injectable pharmaceuticals which are

used in acute care, oncology, integrated infusion therapy and medical management

solutions.  The corporate address and principle place of business is: Hospira, Inc.,

275 North Field Drive, Dept. 051M, Bldg. H1-2S, Lake Forest, Illinois 60045.

8)   Sanofi-Aventis (SNY), is a global pharmaceutical company who is listed on the

New York Stock Exchange with the symbol "SNY".  The Company developed and

distributes the key therapeutic areas of Cardiovascular Disease, Central Nervous

System, Internal Medicine, Metabolic Disorders, Oncology, Ophthalmology,

Thrombosis, and Vaccines.  The corporate address and principle place of business

is:  Sanofi-Aventis, 55 Corporate Drive, Bridgewater, New Jersey 08807.

9)   Merck and Co, Inc. (MRK), is a worldwide biotechnology and pharmaceutical

company which also is a biologics contract manufacturing organization with an

established network that includes providing third-party services for bio-processing

and bio-manufacturing services.   The corporate address and principle place of

business in the U.S. is:  Merck and Co, Inc. Global Headquarters, One Merck Drive,

Whitehouse Station, New Jersey 08889-0100.

10)   Astra Zeneca (AZN) is a global biopharmaceutical corporation which focuses on

the development, research, manufacture and sale of a variety of medications which

6

are used throughout the world. The corporate address is: Astra Zeneca PLC, 1800 Concord Pike, P.O. Box 15437, Wilmington, Delaware 19850-5437.

11) Centrocor Ortho Bioteck, Inc. is a pharmaceutical corporation which focuses on the development, marketing and sale of a number of pharmecutical medications with a specific focus area in the treatment of immune disorders and diseases and has been doing so since 1990. The corporate address is: Centocor Ortho Biotech, Inc., 800 Ridgeview Road, Horsham, Pennsylvania 19044.

12) Phil Polillio was, during the entire period pertinent to this case, the Corporate Director of Pharmacy for Universal Health Services, Inc. In this role, he oversaw all the activities of the Directors of Pharmacy for each facility, dictated and enforced drug policy, communicated and worked with the representatives from Amerisource Bergen and Broadlane, and advised each facility on the drugs they should be purchasing and using. Polillo was also in charge of a number of policy decisions related to cutting costs, including whether or not certain drugs should be pushed, promoted, cut, replaced or even used off label. See Exhibits 6-14. Polillo is a resident of the state of Pennsylvania.

13) From or about 2006 and continuing through 2009 in the Northern District of Texas, the Western District of Oklahoma and elsewhere, Defendants together work with others known and unknown did knowingly and willfully conspire, execute, attempt to execute a scheme and artifice to defraud the Medicare Program, which is a healthcare benefit program as defined in Title 18, United States Code, Section 24(b) affecting Interstate Commerce, to obtain money from Medicare and Medicaid by

means of materially false and fraudulent pretense, representation and promises, in connection with the dealing of and payment for healthcare benefits, items, and services as set forth herein.

## II.   FILING UNDER SEAL

14)   In accordance with 31 U.S.C. § 3730(b)(2), this complaint is filed in camera and will remain under seal and not be served on the Defendant until the Court so orders.  Furthermore, a copy of the complaint, along with required documents has been served on the U.S. pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. (4)(i).

## III.   JURISDICTION AND VENUE

15)   This is a civil action arising under the laws of the United States to redress violations of the False Claims Act, 31 U.S.C. §§3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and, (iii) pursuant to 28 U.S.C. §1345, because the United States is a plaintiff.

16) This court has supplemental jurisdiction over the other governments' claims under 28 U.S.C. §1367.

17) The Defendant transacts and has transacted business in the United States Northern

District of Texas, among other locations, within the meaning of 31 U.S.C. § 3722(a).

18) This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media. To the extent that there may have been a public disclosure unknown to Relators, the Relators are original sources under 31 U.S.C. §3730(e) (4) and all relevant state statutes. They have direct and independent knowledge of the information on which the allegations are based and have voluntarily provided the information to the Government before filing this action. Relators have provided to the Attorney General of the United States, to the United States Attorney and to the Attorneys General of the other plaintiff governments a disclosure statement summarizing known material evidence and information, in accordance with the provisions of 31 U.S.C. §3730(b) (2) and the analogous statutes of the other plaintiff governments. This disclosure statement is supported by material evidence in relators' possession.

19)   This court has personal jurisdiction over the defendant under 31 U.S.C. §3732(a) because defendant submitted false or fraudulent claims to the United States and other plaintiff governments. Defendant can be found in, is authorized to transact business in, and is now transacting business in the United States Northern District of Texas and in the localities of all of the plaintiff governments.

20)   Venue is proper in this jurisdictional district pursuant to 28 U.S.C. §§ 1391 and 1395 and 31 U.S.C. §3732(a).

21) Venue over this action with regard to the states is proper under each specific state provision for recovery based on this conduct because it is tied to the claims under the Federal False Claims Act. Jurisdiction is also proper pursuant to the supplemental jurisdiction provisions previously cited.

## IV.   PLAINTIFF'S DIRECT AND INDEPENDENT KNOWLEDGE AND VOLUNTARY DISCLOSURE OF THE DEFENDANT'S FRAUDULENT CONDUCT TO THE UNITED STATES

22) The Plaintiffs/Relators obtained personal and direct knowledge of the Defendants fraudulent conduct through their individual employment with Defendant UHS where they were under the direction of Defendant Phil Polillo at all times relevant to this action. Specifically:

a) The Relator, Tom Proctor went to work for St. Mary's Hospital in Enid, Oklahoma, as a director of Pharmacy on May 26, 2006 and continued to work in the capacity until June 5, 2008. St. Mary is owned and operated by a subsidiary of UHS and is located at 305 South 5th, Enid, Oklahoma 73701 in the U.S. District Court of Oklahoma Western District.   In his capacity as director of pharmacy he learned of UHS's kickback scheme with pharmaceuticals, drug promotion and drug equipment as set for the herein.

b) The Relator, Michael O'Grady became the director of pharmacy at Northwest Texas Healthcare System (NWTHS) in 2005 and remained employed in that position until June of 2009.   NWTHS is owned and operated by a subsidiary of Universal Health Service, Inc. (UHS) a King of Prussia, PA based company a

Defendant in case.  NWTHS is located at 1501 S. Coulter Amarillo, TX 79106 and

is in the Northern District of the U.S. District Court for Texas.  It was in his

capacity a director of pharmacy for the Defendant hospital that the Relator learned

of the various kickback schemes the Defendants with pharmaceuticals, drug

promotion and drug equipment as set for the herein.

## V.   PRELIMINARY STATEMENT OF DEFENDANTS' FRAUDULENT CONDUCT AND CIRCUMSTANCES

23)   UHS was required to submit an application for enrollment in Medicare for all of its

locations. Employees at each location (on behalf of UHS) signed, agreed to and submitted

a Medicare enrollment application (see Exhibit "2") on behalf of UHS. The Application

specifically certifies that:

> I am familiar with and agree to abide by the Medicare
> or other federal health care program laws, regulations
> and program instructions that apply to my
> provider/supplier type. The Medicare laws,
> regulations, and program instructions are available
> through the Medicare Contractor. I understand that
> payment of a claim by Medicare or other federal health
> care programs is conditioned on the claim and the
> underlying transaction complying with such laws,
> regulations and program instructions (including the
> anti-kickback statute and the Stark law), and on a
> provider/supplier being in compliance with any
> applicable conditions of participation in any federal
> health care program.

24)   Defendant UHS is a general corporation which owns a number of facilities. The

corporation itself is made up of a full management structure which includes the

Corporate Manager of Pharmacy – Phil Polillo. Beneath the general corporation

11

management are all the hospitals and facilities owned by the corporation which are each run by a CEO, who receives orders, direction and permission from corporate. In regards to the Pharmacy, there is a Director of Pharmacy for each facility who reports directly to the CEO of the facility and Phil Polillo at Corporate.

    a) Pharmacy Business including ordering was done by the Director of Pharmacy or local pharmacy personnel submitting their orders through and electronic system to the wholesaler, Amerisource Bergen, after the contracts had been negotiated. However, the budget of the pharmacy was set out by UHS Corporate and if anyone was going to make a purchase over the budget for the specific time period approval of the local CEO (after his consultation with corporate) was required.

    b) The corporate instructions and policy regarding the use, purchasing and incentives of pharmaceuticals was conducted through the Defendant UHS's employee Phillip Polillo the Corporate Manager of Pharmacy Business Management.

25) Amerisource Bergen was in the habit of issuing "credit memo's" for reductions in prices which were given by the Drug Companies if the UHS facilities met the specific requirements for their incentives. These "credit memo's" (some of which are included as exhibits) reduced the amount of cash that the Defendant UHS Corporate (who paid for all the bills) owed the Wholesaler. A "Credit Memo" was contingent upon meeting the requirements of the Pharmaceutical Company and was given long after the "original price" had been paid. These memo's operated to reduce the cost of drugs, or any outstanding payments, due to the Wholesaler from

Defendant UHS. It functioned just like cash and was treated as such by all the companies involved.

26) Throughout the entire time period listed, 2006-2009, the named drug Manufacturers and distributors actively sought out contact with UHS in order to provide them incentives above and beyond those listed in the books in an effort to increase their market share and usage in these facilities. This relationship was active on both sides and each Defendant Manufacturer had contact with UHS, both corporate and the facilities, in order to implement and check on these schemes and the amounts being purchased.

27) This complaint below describes a scheme implemented by the UHS corporate office which was put in place through the direction of the Corporate management with all of the Pharmacies which purchased drugs in the entire system. The scheme was to be the same in all of the facilities and operated in every hospital, both acute and mental facility, which was a part of the system just as is documented and described with the "sample" facility information provided below.

   a) Specifically, the general scheme involved hospitals using and ordering only specific products in order to allow the corporation to receive a cash or in-kind incentive.

   b) Generally, the Corporate office, through Phil Polillo, instructed that the incentives and cash be directed to the Corporate offices; if they were received at a facility, the facility was to transport them to the corporate offices.

   c) The scheme included control of the Chargemaster billing system by the

13

corporate offices so that each facility billed the options that they selected

instead of the amount actually given to a patient.

d) For all drugs used by the staff of the facilities, billing was mandated through

the Chargemaster system. Even if the drugs were free to the facility or

28) In each year pertinent to this case, 2006 – 2009, every Hospital filed annual cost

reports with the government, as directed by statute, for reimbursement purposes.

These cost reports did not include the "Incentive" amount of the drug price that

UHS received from Astra Zeneca and Ortho-Biotech but instead listed the cost of

the medication from the GPO as the cost of care for the medication of each patient.

29) All facilities required the physicians (including anesthesiologist) to record the actual

amount of all drugs used on a particular patient and input that amount into the

patients chart. However, the amount put in the chart was not used to charge the

patients – instead the patients would only be charged by the amount of drug that

was placed into the chargemaster system. However, the physicians (especially the

anesthesiologists) would take medication out of Pyxis and use the entire vial for all

of their surgeries during the entire day. Because of this, the vial was used on

multiple patients and the correct amounts were recorded on the patient records but

not indicated in the billing to any federal healthcare programs or state healthcare

assistance programs.

a) Because the chargemaster system did not allow for the alteration of amounts or the

use drug quantity used instead of a single entry for each item, the physicians notes

to amounts, the pyxis records and the charges from chargemaster showed

14

significant discrepancies. This is evident in the case of Ketamine where St. Mary's itself charged patients for 192 vials when only 105 full vials were actually used or purchased by the corporation. This was the same at every facility using the UHS Chargemaster system. (See Ketamine Section below for more information along with Exhibit 14.)

b) This is also significant with regard to the Nitroglycerin SL tablets which were used in the ER, OR, ICU and Recovery at the facilities. With regard to these tablets, the bottle contained 25 pills and the chargemaster system only allowed for an entire bottle to be charged when it was given to a patient. There was NO option to charge a lesser amount of medication and so the actual amount of charges is likely up to 25 times more than the amount used which can be found by comparing the inventory and orders to the charges.

30) Each facility was on a Chargemaster system for all of the billing for pharmaceuticals used on the inpatients. Exhibit "3" - Email of Kiner forwarded by Polillo - 5/29/2007. The Chargemaster system and entries were completely controlled by UHS Corporate (only certain members of Corporate and the CEO's of the facilities were allowed to make any changes to the system)

a) Each specific drug was put into the Chargemaster system with a specific code which was kept uniform for all of the facilities so that UHS Corporate could track the same drug at all of the different facilities.

b) Drugs were entered into the Chargemaster system based NOT on the amount of the drug used but on the vial or dosage size that the drug was ordered in. There

15

were no options in the Chargemaster system for partial doses of drugs OR for the disposal of single vial medication which was not used.

c) It was routine policy at the facilities that if a patient needed more than a single vial, they would be charged for two entire vials no matter what amount from the second vial was actually used on them.

    i) It was routine policy for the UHS facilities to use mutli-dose vials on patients and charge them for the entire amount regardless of the actual amount used because there was only a single option in the chargemaster system.

    ii) The Chargemaster entries were all approved by Corporate and had a general consistency among all of the facilities using the pharmaceuticals.

    iii) Since the chargemaster generally only had vial options (for example see Exhibit 14(B) – Ketamine Chargemaster Screen Capture) items in all the facilities were billed by the vial.

31) Many of the patients receiving care supplied by the Defendant UHS Hospitals are beneficiaries of federal healthcare programs such as Medicare, Medicaid, TRICARE (which includes the Civilian Health and Medical Program of the United States) ("CHAMPUS"), the Civilian Health and Medical Program of the Veterans Administration ("CHAMPUS"), Federal Employees Health Benefits Program (FEHBP), Railroad Retirement and Federal Workers' Compensation Insurance.

32) Defendant UHS has a specific scheme of Generalized Cost Cutting Measures which included finding ANY incentives they could with regard to prescription drugs in order to save the corporation money each quarter. They actively tracked

and sought out these incentives. Furthermore, the Corporate scheme required that the discounts be provided directly to the corporate offices and NOT reported to the government.

    i) *See* Exhibit "4" which includes the details from the accounting department on the savings due to pharmacy switches and cost cutting measures; Exhibit "5" – Email Regarding Cost Cutting Measures From Ray Grenier, UHS CFO, to Mike O'Grady.

        (1) This "cost cutting policy" was encouraged greatly by the UHS Corporate Management, including Phil Polillo, by forcing the pharmacy and Directors of pharmacy to switch to medications which provided incentives from the drug manufacturer. These switches were made based ONLY on the price of the incentive that the corporate office would receive and based on nothing else.

        (2) Also, Exhibit "4" demonstrates that the scheme included UHS corporate management making decisions of when to go "off label" in order to get the discounted savings on procedures where they would not have received the incentive. See Daily DVT Prophylaxis instead of Lovenox for total knee replacements which the corporation was clearly aware is NOT FDA approved but could save them up to $15,000 per facility.

33) Through the direction of Phil Polillo, and with confirmation from a number of facilities DOP, it is clear that all the policies and practices discussed here were present not only at the facilities of the Relators but throughout the nation. See

Exhibit 6-14.

34)   **ZEMURON FACTS AND CIRCUMSTANCES:**

a)   The following information was gathered by the personal experiences of the

relators and is documented by the items attached in Exhibit "6" – Zemuron

Documents.

b)   UHS facilities used Zemuron, a general anesthetic of Rocuronium Bromide, in

surgeries as an adjunct to the actual anesthesia being administered to patitients.

Zemuron (Rocuronium Bromide) acts as a neuromuscular blocking agent during

surgery and mechanical ventilation when administered intravenously. Zemuron is

manufactured by Organon, Inc., the United States division of Schering Plough (or

Schering Corporation). UHS facilities obtained the drug from their wholesaler,

Amerisource Bergen, in 10 MG/ML units. Vials of the drug were purchased from

the wholesale company; each vial came in 50mg/5ml units.

i)   As required by hospital procedure, physicians had to chart the amount of drug

which was actually used on the patient. A number of the patient charts

demonstrating the amount of actual drugs used can be found in Exhibit 6(b).

c)   UHS facilities got a Incentive from the manufacturer of the drug based on the

number of vials used at each facility regarding Zemuron.

d)   The persons at St. Mary's in charge of all the contracts made directly with

Organon/Schering were Diane Hutson and Lori Wiener.

e)   UHS facilities, including St. Mary's, administered the drug to patients including:

(1) Olive C. Hobbs; (2) Rex A. Pruett (3) Barbara A. Maly; (4) Arlene L. Smith;

(5) Eunice D. Barnes; (6) Gary L. Keller; (7)Edgar D. Brown; (8)Davida L. Whitsitt; (9) John R. Price; (10)Leroy J. Heinrich; and 58 others. Exhibit "6(B)"

f)  The drug was administered to these specific patients in lower amounts than what was indicated as used on their billings statements. For example (See Exhibit "6(A) and (B)"):

   i)  Neva Wedel was charged for 150Mg but there was only a documented use of 40mg.

   ii)  Edwin R. Martin was charged for 50mg but only 10Mg was used.

   iii) Allan M. Dolasinski was charged for 100mg when only 40 was used.

   iv) Ulysses Nevitt was charged for 250mg when only 20 was used.

g)  As demonstrated by the charts presented, this systematic discrepancy held true for all of the St. Mary's patients including those on Medicare, Medicaid, Tricare, Commercial Insurance and Managed Care Plans. Exhibit 6(B) provides examples of all of these kinds of improper billing.

h)  Each multi-dose vial was kept in the surgical centers and used repeatedly until it was finished; however, each patient was charged for the use of at least one entire vial even if the vial had been used for patients before or after it was used on them.

i)  At the Direction of UHS Corporate and Phillip Polillo, the directors/managers of the pharmacies were told to report the higher average wholesale price (AWP) of the drug to the government on the cost reports dealing with the cost of patient care. All of the individual UHS hospital were so instructed and the kickback scheme became a system practice.

j) The Average wholesale price of the drug, paid to Amerisource Bergen, for a box of 10 vials of Zemuron was $381.40 per dosage (each 10MG/ML vial). However, the actual cost of the same box to the facility (or the true cost) came in at around $219.12. This means that the AWP per vial would be approximately $38.14 while the true price for the same vial would be $21.91.

    i) No Incentive amount was ever reported on this drug to any federal agency for compliance.

k) When the cost of Zemuron was assessed to each patient, the pharmacy used the Chargemaster system (as each facility was required to use for all charges) which only gave one option for the price charged to the patient; the price placed in chargemaster, by Phil Witaker at St. Mary's as directed by UHS corporate, was the AWP instead of the true cost with the manufacturers Incentive.

    i) These multi-dose vials were typically used on at least two patients, sometimes more.

    ii) The vials were kept with the staff, not returned to the pharmacy, and so were never recorded or reported as being taken out for multiple patients; however, each patient was billed for an entire vial.

35) **LOVENOX FACTS AND CIRCUMSTANCES:**

a) The following information was gathered by the personal experiences of the relators and is documented by the items attached in Exhibit "7" – Lovenox Documents.

b) Lovenox is a low molecular weight heparin pharmaceutical used to treat cases of

deep vein thrombosis and to prevent the condition, and blood clots, after surgery.
The drugs FDA given name is Enoxaparin Sodium. It is manufactured by Sanofi-
Aventis U.S. / Sanofi-Pasteur.

c) Phillip Polillo, the Corporate Manager of Pharmacy Business Management for
UHS, directed that all pharmacies in each of the UHS hospitals use Lovenox
specifically as the drug of choice because of the Incentive they were getting on the
drug. More specifically, Phil Polillo directly had conversations with the pharmacy
directors and told them that they were not to bring the alternative drug, Arixtra,
into the hospital because it could adversely affect the price they were getting on
Lovenox. When informed that Lovenox could possibly cause complications in
certain patients, those with HIT confirmed or suspected, the relator was informed
that he was to use Lovenox period. See Exhibit "7(A)"

d) Also, UHS received a 3.5% discount through the wholesaler, Amerisource Bergen
per the general contract the companies had reached. Exhibit "15."

e) Lovenox was given an additional incentive of a 30% incentive off the Average
Wholesale Price by Health Trust Purchasing Partners (a second GPO) but only on
the condition that it was placed in the **performance class** of over 90% verses the
alternates of Arixtra, Fragmin and Innohep. See Exhibit "7(A)" - Polillo Email
6/18/2008.

f) By Keeping the Lovenox use at the appropriate level, the 30% incentive was
given to the purchases of the drug for all the facilities; this incentive saved the
hospital a tremendous amount of money on each purchase. The following table

21

displays the money saved due to the incentive.

| Product | Size | WAC | Price after 30% incentive | Actual price after extra 3.5% |
|---------|------|-----|---------------------------|-------------------------------|
| Lovenox | 30mg | 204.56 | 143.19 | 136.03 |
| Lovenox | 40mg | 272.73 | 190.91 | 181.36 |
| Lovenox | 60mg | 409.59 | 286.71 | 272.37 |
| Lovenox | 80mg | 546.12 | 382.28 | 363.17 |
| Lovenox | 100mg | 682.64 | 477.85 | 453.96 |
| Lovenox | 300mg Vial | 204.56 | 143.19 | 136.03 |
| Lovenox | 120mg | 819.44 | 573.61 | 544.93 |
| Lovenox | 150mg | 1024.30 | 717.01 | 681.16 |

g) The incentive amount was calculated by the wholesaler or GPO (the GPO in this case is owned by the wholesaler Amerisource Bergen). Once calculated, the amount was given to the manufacturer through a notifictation and the manufacturer would do one of two things: (1) issue an incentive check directly to the UHS Corporate Offices; or (2) inform ABC that a price adjustment was required. If the price adjustment was necessary, then the wholesaler was compensated the amount and would issue a "credit memo" (described previously) to UHS Corporate to later reduce their costs on any items they purchased. The incentive amount, whether by check or adjustment, was never reported to the government by the manufacturer, wholesaler or UHS. For UHS, in both cases, the incentive came well after the quarterly calculations for cost of patient care were determined and confirmed by each facility. The facilities were specifically directed to only make note of the cost for the UHS Corporate cost numbers and NOT to recalculate or change the original AWP reported to the government.

22

36)  **MERCK INCENTIVES SCHEME FACTS AND CIRCUMSTANCES**

a) The following information was gathered by the personal experiences of the relators and is documented by the items attached in Exhibit "8" – Merck incentives Documents.

b) In 2007, UHS facilities were informed that if they used certain Merck drugs they would receive incentives through a program called the PLUS2 Program (for Performance Leadership for Unequivocal Savings).

c) The PLUS2 program placed the pharmacies and facilities into specific levels. A facility would start out the first quarter of the program with a base level and then, based on their usage of the drugs, the levels would increase accordingly. Each level increase brought with it an increase in the percent Incentive that the corporation would save.

d) The Following Drugs were in the program with their incentives on certain specific dates:

i) Primaxin (imipenem and Clisatatin) which began the quarter ending 6/30/07 in the current level of 1 with a incentive of 32.6% based on a contract that Merck had with the hospital itself. This stayed at the same level at the end of the quarter.

ii) Invanz (ertapenem sodium) which began the quarter of 6/30/07 at the base price and finished with the contract incentive from the manufacturer over the average wholesale price of 8.6%. Because of the use, this was then moved up to level 1 (like primaxin) at the end of that quarter.

23

e) UHS Facilities, including St. Mary's, participated in the CAP (Cancidas Access Program) when obtaining the drug CANCIDAS (Caspofungin Acetate). The program specifically included discounts for the facilities IF they achieved the market share requirements of the program.

f) From their beginning participation until September of 2007, the CAP market share requirements included that each facility would be placed in a incentive level, L1 or L2. If in L1, the facility was required to purchase CANCIDAS in a 60-74.9% quarterly market share to the exclusion of other similar drugs by different manufactures. If the facility maintained that share, they were given a Incentive directly from Merck of 30.19% on the total price spent reducing the cost of a 50mg and 70mg dosages from $329.47 (market price without GPO incentive) to $230.00. For L2, the facility was required to maintain a quarterly share of over 75% of CANCIDAS as opposed to the alternative drugs and if it was properly maintained they would receive a incentive of 55.08% directly from the manufacturer reducing the price of the 50mg and 70mg dosages from $329.47 to $148.00.

g) From September of 2007 on, the CAP program changed in terms and provided that all L1 facilities would receive an increased Incentive of 45% on the drug (market price of $337.71 reduced to $185.74 per unit) and that the L2 facilities would receive an increased incentive of 64% ($337.71 discounted to $121.58 per unit) with the same market share requirements.

h) Each UHS facility was also allowed to participate in a Merck Incentive program

24

regarding Recombivax HB and Comvax (monovalent Hepatitis B)during 2007 and 2008. This program required that each facility be separated into two different market share classes – L1 (80% Market Share) and L2 (90% Market Share). To maintain the market share, the purchases of Recombivax and Comvax combined were divided by the sum of the purchases of those drugs plus the competing Engerix-B. Based on which level they were in, each facility would receive an incentive on the price of the two drugs directly from the manufacturer - Merck.

   i) The direct communication from Merck (See Exhibit 8(a) – Jan 15, 2008 Letter) indicated that there would be NO incentive given if the drugs were not purchased that quarter AND if the quota was not met. This indicates that the drugs HAD to be purchased instead of just used.

i) For all of the programs, the incentives came as a "credit memo" which went from Merck to ABC and then from ABC to UHS Corporate and the Facilities. These credits were never reported on the annual reports because the invoices showed a "wholesale" price without any inclusion of the incentives.

j) For both the PLUS2 and CAP program, Phil Polillo directed that the discounts not be included in the annual cost reports to the government and the average wholesale price of the drug, as obtained from Amerisource Bergen, should be reported.

k) During the implementation and exercise of the scheme, Phil Polillio, as the Corporate Pharmaceutical Director, ordered and directed that false documents be created to hide the incentives given to the hospital. These documents included, but

are not limited to, the false cost reports of each hospital which provide a AWP price for the drugs before the Incentive was credited thus making the AWP and the costs of running the facility much higher in the report than they were in actuality.

37) **BAXTER ANESTHETIC GASES FACTS AND CIRCUMSTANCES**

a) The following information was gathered by the personal experiences of the relators and is documented by the items attached in Exhibit "9" – Baxter Anesthetic Gas Documents.

b) UHS facilities used multiple anesthetic gases manufactured by Baxter for sedation and anesthesia of patients during surgery. All these products were considered schedule "A" products for which each facility received an incentive beyond the prices negotiated by their GPO. These products include the following:

i) Brevibloc (Esmolol) HCL in a 100mg strength 10ML.

ii) Forane (Isoflurane) USP liquid in both a 100mL and 250mL bottle.

iii) Suprane (Desflurane) USP Liquid in either a 240 or 250 ML bottle.

c) UHS facilities got a direct Incentive from the manufacturer, Baxter, for each and every unit of these drugs that they used. The incentives were negotiated through a contract agreement, managed at UHS Corporate by Kay Rapp and Phil Polillo, which provided the following Incentive amounts:

i) Brevibloc (Esmolol) HCL in a 100mg strength 10ML. 3% off the top Incentive on each unit (cost of $9.11 in a package of 25).

ii) Forane (Isoflurane) USP liquid 100mL – 9% off the top Incentive on each unit ($10.50 each in a box of 6).

26

iii) Forane (Isoflurane) USP liquid 250mL bottle – 4% off the top Incentive on each unit ($24.00 each in a box of 6).

iv) Suprane (Desflurane) USP Liquid 240mL bottle - 8% off the top Incentive on each unit ($125 each in a box of 6).

v) Suprane (Desflurane) USP Liquid 250 ML bottle - 4% off the top Incentive on each unit ($153 each in a box of 6).

vi) Sevoflurane – Reduced the price to approximately $150.90 for each unit. Phil Polillo specifically directed that only Baxter drugs (and not the previously stocked Abbot drugs) be purchased and used in the facilities because of this incentive. Exhibit "9(A)" - Email – 4/23/07.

d) Phil Polillo directed the UHS facilities to order the specifically incentivized gases and not the central supply that they were accustomed to using because of the Incentive price. Exhibit "9(A)."

e) At the instruction of Phil Polillo, each facility was forced to migrate to the Baxter anesthetic gases, for the lower price, and they all were required to change their equipment (using specific vaporizers for the drugs) which the Relator Tom Proctor and the Director of Materials Management at St. Mary's (Vic Brown) objected to. Phil Polillo directed that they had to switch because they had an exclusive contract to get the extra incentives. Exhibit "9(A) - April 4, 2008 Email.

f) The change in equipment occurred because when each facility altered its drug usage the manufacturer, Baxter, provided them with free vaporizers to get them to switch to the gases along with a price drop. Exhibit "9(B)."

27

g) If the UHS Facility failed to sign the exclusive contract for Baxter Anesthetic Gas drugs, they were charged $98 plus installation for all the vaporizers they received. However, if the exclusive contract was signed and complied with the vaporizers and installation were given as an additional free incentive. See Exhibit "9(B)."

    i) A general look at the amount of dollars and the percentage saved can be seen by examining the Suprane numbers in both Exhibit "1", "4" and "5".

h) After the switch, a large number of patients were administered the drug specifically so that the quota's for the contract could be met. A list of those patients and their records can be seen in Exhibit "9(D)."

i) At the Direction of UHS Corporate and Phillip Polillo, the directors/ managers of the pharmacies were told to report the higher average wholesale price of the drug to the government on the cost reports dealing with the cost of patient care. Exhibit "9(A)."

j) Furthermore, at the direction of Phil Polillo the free vaporizers and installation of equipment were also not reported to the government as free incentives provided by Baxter.

## 38) **PROCRIT FACTS AND CIRCUMSTANCES**

a) The following information was gathered by the personal experiences of the Relators and is documented by the items attached in Exhibit "10" – Procrit Documents.

b) During 2006-2007 UHS was purchasing Procrit vials from a wholesaler, Amerisource BergenGPO who obtained the medication from Astra Zeneca, a

national pharmaceutical company.

c) Astra Zeneca provided UHS and their participating hospitals with Value Off
Original ("VOO") Incentive – an offering from the manufacturer which reduces
the Average Wholesale Price of the item – which allowed UHS to receive a
"Incentive" from Astra Zeneca for the purchase of Procrit outside of the buying
group incentive.

d) Procrit is a pharmaceutical used for a multitude of conditions; it is a man made
protein which encourages the body to produce red blood cells and is generally
used in the treatment of anemia and kidney diseases.

e) In 2007, The Defendant, through Phillip C. Polillo, instructed all of its Hospital
pharmacies to use the specific 10 M, 20M, and 40M UN/ML Vials of Procrit as
opposed to the competing drug Aranesp due to the fact that it was "not 'dirt
cheap" but pretty close." See Exhibit "10(A)" - Email 7/5/2007.

f) In 2006-2007, the Defendant's Hospitals, specifically St. Mary's in Enid,
Oklahoma, purchased the drug as instructed through their wholesaler AmeriSource
Bergen for $1747.52 or $1237.18 per 40 M vial, $655.33 per unit for 10M vials,
and $901.95 per 20M vial.

   i) Exhibit "10(A)" demonstrates the ordering of the items along with the after
   executed credits which were given through the wholesaler for the purchases
   of the drugs.

g) In 2007, each Hospital was instructed by Phillip C. Polillo that they should use
Procrit as opposed to any other drugs because they would receive a VOO 2%

market Incentive on the drug plus a special 8% Procrit Incentive on the drug. *See* Exhibit "10(A)" - 6/25/07 email from Phillip C. Polillo.

h) Each Hospital, under the direction of UHS and Phillip C. Polillo, then submitted the VOO's and received Incentive checks for the purchase of Procrit that reduced the hospitals cost, or the true cost of Procrit, to <$4.20 per 1,000 units of the drug. Exhibit "10(A)" - Email 7-5-2007. This cost then translated to the 40M vials being approximately $16, the 10M vials being approximately $4, and the 20M vials being approximately $8 for the hospital and UHS. The Incentive checks were delivered to both the hospital and the corporate headquarters of UHS for deposit.

i) In 2006-2007 UHS itself directed Astra Zeneca to consolidate the checks for the incentives they were sending based on the VOO submission to the corporate headquarters directly. Exhibit "10(A)" - 1/2/07 email from Phillip C. Polillo.

   i) These checks and the accompanying paper work were directed to be sent to Smita Patel and appropriate credits were placed under the control of Martha Walters at the Corporate Headquarters.

j) Since June of 2006, each hospital was directed by Phillip Whitaker to log the Incentive and incentive amount received on each drug (vial) but to report to CMS the average wholesale price (AWP) – before all the discounts – which then shows up in the Medicare cost report as the amount paid for the medications. See Exhibit "10 (A)."

k) The Main home office also figured out a price that each hospital across the board should actually report at the cost of the medication in their cost report filings with

Medicare. This was under the direction of Lorraine Giampietro. Exhibit "10(A)" – Giampietro email.

39) **NITROQUICK FACTS AND CIRCUMSTANCES**

a) The following information was gathered by the personal experiences of the relators and is documented by the items attached in Exhibit "11" – NitroQuick Documents.

b) In 2008, UHS was purchasing their pharmaceuticals, including NitroQuick, from a Wholesaler, Amerisource Bergen GPO who obtained the medication from Ethex Pharmaceuticals, a national pharmaceutical company.

c) The people, from St. Mary's, in charge of the contracts directly with Ethex were Diane Hutson and Lori Wiener for 2007.

d) The NitroQuick, or Nitroglycerin Sublingual, is a pharmaceutical used for a multitude of conditions; the main use of Nitroquick, or nitroglycerin, is to open blood vessels to allow easier flow preventing angina and pain.

e) On January 7, 2008, a representative from Ethex spoke with Kathy R. King, the pharmacy buyer for St. Mary's, and indicated that he wanted to review all of the purchases of NitroQuick from Amerisource Bergen by UHS' facilities because they were prepared to offer the hospitals a deal that for every 3 boxes they bought Ethex would give them one for free. Finally, the rep indicated to Mrs. King that the "reward" could be retroactive for all the purchases made with Amerisource Bergen.

31

f) This incentive was used by UHS during 2006, 2007 and 2008 at all of the facilities which used pharmaceuticals.

g) The typical box of NitroQuick, consisting of 4 x 25 bottles, has a average wholesale price of $18.24, which was reported on the hospital cost reports. However, with the multiple discounts given from the manufacturers and wholesaler, the actual cost of the medication to the facilities ended up being approximately $5.64 per box.

   i) Each time the incentive was given, each UHS facility got a free $18.24 from the manufacturer as an in-kind incentive. They then proceeded to give these free items to patients and charge them for the drugs – including charging Medicare and Medicaid.

h) Each facility pharmacy would submit orders for three boxes of the drug, and approximately ten days following they would then receive a "free" 4x 25 box of NitroQuick, directly from the manufacturer through ABC, that was marked as a "reward" for the previous purchase of three boxes.

   i) Patients who received drugs from the "free" box but were still billed as if the hospital had purchased them were Richard Froese and Mary Swander. Exhibit 11(B).

i) Furthermore, each bottle was specifically intended to be used for only one patient and then discarded when that patient was finished; however, St. Mary's staff was instructed to send full bottles of the drug to the ER and ICU.

32

j) The nurses and physicians in the ER and ICU kept "stashes" of partial bottles to use on multiple patients. So the CMS patient could be charged for the original bottle and three other patients get "free" drugs. But in the cardiac rehabilitation area instead of a pyxis they had patient charge sheets. Each time a patient would get a dose of any drug (Nitroquick) they would mark it on the sheet and send for billing. In this case many patients would be billed for the same bottle. The two people we gave as examples in the ER were given Nitroquick that St. Mary's received as "free goods" and were charged normal price.

k) Each year the facilities filed annual cost reports with the government, as directed by statute, for reimbursement purposes. These cost reports did not include the "Incentive" amount of the drug price that UHS received from Ethex but instead listed the cost of the medication from the wholesaler, the average wholesale price, as the cost of care for the medication of each patient.

l) The amount of the incentives from Ethex were also never reported to the government in any other form by Ethex, UHS or ABC.

40) **GAMMA CAMERAS/ADENOSCAN FACTS AND CIRCUMSTANCES**

a) The following information was gathered by the personal experiences of the Relators and is documented by the items attached in Exhibit "12" – Gamma Camera and Adenoscan Documents.

b) Adenoscan is an injection of adenosine for intravenous infusion generally used as a vasodilator but also used in conjunction with gamma cameras. Adenoscan (adenosine injection) is manufactured by Hospira, Inc. and marketed and sold by

33

Astellas Pharma US; the product is made up of a solution of 3mg/Ml of adenosine with sodium chloride 9mg/Ml with water for injection.

c) In 2007, Kay Rapp and Phil Polillo contacted all the department heads and instructed them that they would be using Adenoscan as the drug of choice for the viewing in the Gamma Cameras due to the Adenoscan Incentive Program they were participating in with Astellas Pharma US. Exhibit 12(A).

d) Specifically, both Phil Polillo and Kay Rapp instructed the directors of each UHS facility that they were to give the serial number and make of the gamma cameras in use at each facility to Mrs. Rapp so that she could transmit those to Astellas Pharma US in order to procure the Adenoscan Incentive – a direct Incentive from the manufacturer of approximately $3600 per camera – for each facility. Exhibit 12(A).

   i) If the information was not provided directly, Mrs. Rapp would call the Directors of Pharmacy at each facility to obtain the serial numbers on the relevant Gamma Camera machines for the corporate office. Exhibit 12(A).

e) Once Kay Rapp obtained the information, she turned that information over to Annette Davis (a pharmaceutical sales representative for Astellas Pharma) who submitted the information to Astellas Pharma Corporate. Once the gamma camera information was submitted, each facility was checked to determine if they were using the Adenoscan drug marketed by Astellas Pharma US and if so then they were given the Incentive. Exhibit "12(A)" - Email 10/05/2007.

f) The incentives came in a one shot Incentive deal from Astellas, as coordinated by

Phil Polillo, directly from Astellas Pharma US; as directed by Phil Polillo, each facility that received the Incentive money was to put those funds in their separate GL (general ledger) account and not the overall general account because the funds were to be kept separate.

g) The Incentive was provided to the facilities on a quarterly basis and was only given to UHS facilities using the Adenoscan product; while the Incentive was attributed to use of the gamma cameras, it was made clear that a facility using the camera without the drug would not receive the Incentive. Exhibit "12(A)" - Email - 09/04/2007.

h) Patients given the Adenoscan (adenosine injection) at St. Mary's in Enid, Oklahoma while the facility was participating in the Incentive include (Exhibit "12(C)"):

   i)     William Beck, James E. Coy, Barbara Griffin, Robert Emery – 2/11/08

   ii)    Paula Huff – 2/8/08

   iii)   Betty Moon, Kelli Haines – 2/6/08

   iv)    Thomas McCreight – 2/4/08

   v)     Judy Bivings – 2/1/08

   vi)    Linda Fuxa, Lorraine Mitchell, Wilma Adair – 1/30/08

   vii)   Richard Randolph – 1/29/08

   viii)  Dea Brown, Emerda McDowell, Teresa Peters, – 1/25/08

   ix)    Margaret Sober, Douglas Froese – 1/24/08

   x)     Foy Clowdus, James Richardson – 1/23/08

      xi)    Dolores Ferreira – 1/22/08

      xii)    Billy Sacket, Ruby Evans, Rosemary Dixon – 1/21/08

      xiii)    Bob Arnold, Maxine Smith, Jackie Brown, Delbert Luginbill – 1/18/08

      xiv)    Daniel Heath – 1/17/08

      xv)    Cecil Thorp, Glenn Fast – 1/16/08

      xvi)    Randal Hackman – 1/14/08

      xvii)    Lana Coursey, Wilma Savoie, Frank Kriby – 1/11/08

      xviii) Jenetta Overstreet, William Robinson, Helen Robinson, Darryl Hays – 1/09/08

      xix)    Michael Armour – 1/8/08

      xx)    Clydena Martin, Jonah Dacidson, Gerald Eckhardt – 1/7/08

      xxi)    Rita Cook, William ussery – 1/4/08

      xxii)  Donna McCartney – 12/14/07

i) Once the incentives were received by the UHS faculties (or the corporate offices) they were segregated from the other funds and each pharmacy was to report the Average Wholesale price of the drugs without reporting the Incentive given for use of the drugs on the facilities gamma cameras. (at the direction of Phil Polillo)

j) The average wholesale price of a 3mg/ml 20ml vial of Adenoscan was $174.85 from Astellas Pharma US which was reduced to $128.24 for each facility under the contract with Amerisource Bergen (by their 3.5% incentive). See Exhibit "12(B)" - Bill – 9/12/06.

k) Each facility received approximately $3600 dollars each quarter for each gamma

camera they owned if they purchased the Adenoscan drug.

41) **LABETALOL FACTS AND CIRCUMSTANCES**

a) The following information was gathered by the personal experiences of the relators and is documented by items attached in Exhibit "13" – Labetalol Documents.

b) UHS facilities used a drug by the name of Labetalol (or Normodyne, Trandate as brand names) which has a primary use of blood pressure reduction when used alone or with other pharmaceuticals. The drug is manufactured by Hospira and was used by St. Mary's and other UHS facilities in 2007 and 2008 as the Labetalol injection in 100mg/20mg dosage vials and also used 200mg/40ml vials.

   i) Both the 20ml and 40ml vials are designated by the manufacturer as made for multiple doses.

   ii) The vials were used on at least two, sometimes three patients; however each patient was charged for the same "full vial" through the Chargemaster system.

   iii) The Chargemaster system was dicated and set up by UHS Corporate and Phil Whitaker at St. Mary's hospital; the system provided only one option for charge on administration of Labetalol to the patients -- a charge for the entire vial at the average wholesale price.

c) The facilities were directed to charge by the vial for the 100mg/20ML dosage vials for injections with patients. (See Exhibit "13" – Labetalol Documents).

   i) March of 2008 by Jerry Garich, the Pharmacy System Director for the Murrieta California Facility Confirmed this was their procedure and that they would be

stocking the 200mg/40mL vials to be used in the preparation of drips and they would also be charged by the vial.

ii) At The Wellington Regional medical center in Wellington, FL the director of Pharmacy John Brisby indicated that they stocked both the 100mg and 200mg and charged both by the vial and not by the amount used.

iii) The Facility in Amarillo, Texas also indicated that they stocked the 200/40mL vial and that they charged only by the vial.

iv) At the facility in Eagle Pass, Texas, the director of Pharmacy Juan Martinez indicated that they would charge the vials to a patient and once that patient was done they would discard any unused medication without accounting for that amount on the charges to the patient.

v) St. Mary's, as run by the relator, was instructed to charge by the vial for the medication and not for the dose actually received.

vi) The Desert Springs Facility in Las Vegas, Nevada followed the proper procedure by only carrying the 4mL vials which are the single dose units.

d) Both the 20mL and 40mL vials are specifically made to be multi-dose vials; however the facilities clearly operated under a policy that they were to charge each patient for an entire vial of the drug no matter how much of the vial was actually administered to the patients.

i) The dosages are only to be administered in 4mL units, which means that the 20mL vials held 5 doses and the 40mL vials held 10 which were improperly charged to one patient and then thrown away.

38

42) <u>**KETAMINE FACTS AND CIRCUMSTANCES**</u> –

a) The following information was gathered by the personal experiences of the relators and is documented by the items attached in Exhibit "14" – Ketamine Documents.

b) Ketamine, manufactured by Hospira Worldwide Inc. Pharmaceuticals, was used by UHS as an anesthetic in surgeries.

   i)   A second (or similar) version of the drug, preferred name Ketlar, is manufactured by Monarch Pharmaceuticals and was also used by St. Mary's and other UHS facilities in 2007 and 2008.

c) All UHS facilities obtained the drug from Amerisource Bergen based only on which product had the lower price.

   i)   Specifically, the hospitals were directed by Phil Polillo to use the specific incentivized brand over the other when they had the choice.

d) Ketamine was used in three different variations by the hospitals: 50Mg/ML in a 10ML Vial, a 100MG/ML 5ML Vial and a 10MG/ML 20 ML vial. Each pharmacy (at each facility) billed the patients, as well as medicaid and medicare, through the chargemaster system. Regarding Ketamine, the chargemaster system only provided one charge option, an entire vial at the AWP. See Exhibit 14(B).

   i)   Note: Exhibit 14(B) shows that the only options for Ketamine (or ketlar) are by the vial. There is no option to charge by the actual amount of drug which was calculated as used.

39

e) The UHS Facilities gave the 100MG/ML 5ML of Ketamine to a significant number of patients from 2006 until early 2008. Each Facility purchased the drug in boxes that came with ten vials of medication; the AWP of those boxes was $178.40 while the true cost of each box was $77.20 (approximately) during 2007 and 2008. That means that each vial, charged in whole no matter how much was used, had an AWP of $17.84 (charged to patients) while the facilities only actually paid $7.72 for the vial. Exhibit 14(C) for all those charged with Exhibit 14(D) for patient records.

   i) That is an over 60% reduction in the price of Ketamine or Ketlar which was never reported to the government.

   ii) This drop in price was given to UHS by either a direct manufacturers check or by a "credit memo" issued by Amerisource Bergen after their interactions with the manufacturer of the drug. Since the purchase varied based on the kickback and low price, so did the incentive payment.

f) The 10MG/ML 20ML vial was also used in a number of cases; this vial had a AWP of $20.63 (1/10 of the cost of the box), charged to patients and reported on the cost reports, but had a true cost to the facilities of only $14.33 (1/10 of the box true cost). Each patient was billed for an entire vial even though the vial itself was specified as a multi-dose vial to be used on more than one patient. See Exhibit "14(A)" - Email Feb. 20, 2008.

40

g) In regard to Ketamine, UHS had a strict policy of charging not for the amount used by each patient but by the vial of drug. *See* Exhibit "14(A) and (D)" - Polillo Email 2/21/08. *See also* Exhibit 14(C) for the direct charges.

   i) There are email confirmations that besides St. Mary's in Enid Oklahoma, facilities in Amarillo, Texas and Las Vegas, Nevada followed the same procedures. This charging was done through the chargemaster system, (as each facility was required to use for all charges) which only gave one option for the price charged to the patient; the price placed in chargemaster, by Phil Witaker at St. Mary's as directed by UHS corporate, was the AWP instead of the true cost with the manufacturers Incentive. *See* Exhibit "14(A)".

h) Each vial which was not completely used by one patient, who was charged for the entire amount, was then re-used on other patients until it was finished. Exhibit 14(C) from the drug charts demonstrates that a vial would be checked out and then used on multiple patients instead of discarded. This process was standard practice in all the UHS facilities. At St. Mary's the disparity from 3/1/07 to 3/5/08 is shown by the following figures:

   i) St Mary's ordered 120 vials of the 10mg/Ml 20Ml vial. They used 105 of the vials (having 15 left at the end of the cycle) but charged patients for 192 full vials of the drug. Here, they incorrectly charged all the patients but specifically overcharged for 87 vials of Ketamine (Ketlar). Exhibit 14(A) – Order Inventory.

ii) St Mary's Ordered 20 Vials of the 100MG/ML 5Ml vials and has 7 left in inventory, so they used a total of 13 vials. However, they charged patients for 96 vials of the drug. Again, they overcharged each patient, but specifically they charged patients for 83 vials of Ketamine (Ketlar) which was never used.

i) At the Direction of UHS Corporate and Phillip Polillo, the directors/managers of the pharmacies were told to report the higher average wholesale price of the drug to the government on the cost reports dealing with the cost of patient care.

## VI.     OTHER PERTINENT FACTS

43) 42 U.S.C. S. 1320a-7(b) makes it a criminal offense to knowingly and willfully to give or receive any kickback or incentive for prohibited behavior, including referrals or purchases, for products or services which will be paid for, either in whole or part, by a Federal Healthcare Program.

a) This includes but is not limited to payments made by the government under Medicaid, Medicare, TriCare and CHAMPUS.

44) The manufactuer and approval of drugs is done through the Food and Drug Administration and has been for all times present in this action. Furthermore, the government regulates the sale, purchase and distribution of drugs through a series of regulations.

a) When submitting bills to Medicare, the parties submitting billing and reimbursement requests for Drugs are required to follow specific guidelines which are promulgated by the agency.

42

i) Each hospital certifies compliance with these regulations as a condition of being included in the payment program.

ii) See Medicare Claims Processing Manual, Chapter 17 – Drugs and Biologicals

## VII.    THE UNITED STATES HAS BEEN DAMAGED

45) Earlier than July of 2008, the Defendants have profited and the United States has been damaged by the practices of the Defendants.  The Defendants caused false claims to be made to healthcare programs for payment, reimbursement and made, used, or caused to be made or used, false records or statements to enable false claims to be allowed or paid by federal healthcare programs. The government has also been significantly damaged by the wrongful retention of the payments on the part of the Defendants because the government lost the use of the money and all interest on the monies during the time period of the wrongful retention.  The conduct herein described violates the Anti-kickback Statutes.

## VIII.    THE NAMED STATES HAVE BEEN DAMAGED

46) Earlier than July of 2008, the Defendants have profited and The State of Arkansas, The State of California, The State of Delaware, The District of Columbia, The state of Florida, the State of Georgia, the State of Illinois, the State of Louisiana, the Commonwealth of Massachusetts, the State of Michigan, The State of New Jersey, the State of Nevada, the State of Oklahoma, and the State of Texas have been individually harmed and damaged by the practices of the Defendants.  The Defendants caused false claims to be made to healthcare programs for payment,

43

reimbursement and made, used, or caused to be made or used, false records or statements to enable false claims to be allowed or paid by federal healthcare programs. The States have also been significantly damaged by the wrongful retention of the payments on the part of the Defendants because the government lost the use of the money and all interest on the monies during the time period of the wrongful retention and failed to be able to pay back any wrongfully paid money to the government causing them to withhold repayments due.  These actions contravene the Statutes and Laws put into place by each of these States (listed below in detail) which prevent the submission of false claims and documents to have the State Assistance Program (more generally Medicaid) pay for improper items. As such, each state was Damaged by the conduct of the Defendants' because they were induced into paying claims to which the Defendants had no legitimate claim.

## IX.    RELATORS CAUSES OF ACTION[1]

### COUNT I
### FEDERAL FALSE CLAIMS ACT 31 U.S.C. § 3729(A)(1)(A)

The Plaintiff/Relators bring the following count against the following Defendants:

Universal Health Services, Phil Polillo, Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY),

---

[1] The Allegations brought in this complaint by the Relators are based on all current statutes in effect in the United States at this time and during the time of the conduct. However, it is necessary to note that the Fraud Enforcement Recovery Act (hereinafter FERA) did affect the language of the False Claims Act, found at 31 U.S.C. §3729 et sec., with changes that went into effect on July 7, 2009. However, the FERA amendments of 2009 did provide that the amendments changes would be retroactive regarding certain changes to the statute.

Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. and in support of said count states the following:

47)   The Plaintiff alleges and incorporates by reference the allegations contained in paragraphs 1 through 46 of this Complaint.  This is a claim for triple damages, civil penalties, cost and attorney fees under the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq. as amended.  By means of the acts prescribed above, the Defendant knowingly presented or caused to be presented false or fraudulent claims for payment to the United States.  The United States, unaware of the falsity of the claims made by the Defendant and in reliance upon the accuracy thereof, paid false claims that would otherwise would not have been allowed.  By reason of this payment, the United States has been damaged, and continues to be damaged in a substantial amount.

## COUNT II
### FEDERAL FALSE CLAIMS ACT U.S.C. § 3729(A)(1)(B)

The Plaintiff/Relators bring the following count against the following Defendants: Universal Health Services, Phil Polillo, and Amerisource Bergen, Corp. (ABC) and in support of said count states the following:

48)   Plaintiff realleges and reincorporates by reference to the allegations contained in paragraphs 1 through 47 of this Complaint.  This is a claim for triple damages, civil penalties and attorney fees under the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq. as amended.  By means of the acts described above, the Defendant

45

knowingly made, used or caused to be made, or used false records or statements to get false or fraudulent claims paid by the United States. The United States, unaware of the falsified records, statements or claims paid for claims that would otherwise not have been allowed.  By reason of these payments, the United States has been damaged and continues to be damaged in a substantial amount.


## COUNT III
### FEDERAL FALSE CLAIMS ACT U.S.C. § 3729(A)(1)(C)

The Plaintiff/Relators bring the following count against the following Defendants: Universal Health Services, Phil Polillo, Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. and in support of said count states the following:


49)  Plaintiff realleges and reincorporates by reference to the allegations contained in paragraphs 1 through 48 of this Complaint.  This is a claim for triple damages, civil penalties and attorney fees under the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq. as amended.  By means of the acts described above the Defendant Corporations, including certain of its employees/agents,  and each individual Defendant conspired to defraud the United States by getting false or fraudulent claims allowed or paid after inducing the patients through illegal value payments. The United States, unaware of the falsified records, statements or claims, paid for

46

claims that would otherwise not have been allowed.  By reason of these payments, the United States has been damaged and continues to be damaged in a substantial amount.

50)  The Defendants knowingly conspired to obtain payment on claims which they had obtained through illegal inducement which violated their contract with SoonerCare. Upon payment of those claims by SoonerCare, which was totally unaware of the significant fraudulent conduct upon payment, the Defendants, individually and through their corporations, conspired to conceal the overpayment of funds and avoid repaying the amount to SoonerCare in violation of 31 U.S.C. §3729(a)(1)(G).

51)  The Conspiracy of the Defendants significantly and substantially harmed the government.

## COUNT IV
### FEDERAL FALSE CLAIMS ACT U.S.C. § 3729(A)(1)(G)

The Plaintiff/Relators bring the following count against the following Defendants:

Universal Health Services and Phil Polillo and in support of said count states the following:

52)  Plaintiff realleges and reincorporates by reference to the allegations contained in paragraphs 1 through 51 of this Complaint.  This is a claim for triple damages, civil penalties and attorney fees under the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq. as amended.  By means of the acts described and the payment by the government, the Defendant received monies to which they were not entitled. Furthermore, the Defendants knowingly and willingly accepted the funds to which

they did not have a claim and retained those funds without informing the government of the wrongful payment. Under 31 U.S.C. §3729(a)(1)(G), the Defendants have an obligation to repay all of the wrongful payments to which they did not have legal claim.

53) The Defendants failed to repay any of the wrongfully retained monies and concealed the improper overpayments from the government against federal laws.

54) The Defendants further acted with improper avoidance of the obligation to repay the funds to the government in violation of the federal false claims act. In doing so, the Defendants, both individuals and the corporation, acted to knowingly retain the wrongful government payments which were not due to them.

55) The government was immediately entitled to the return of the wrongful payments which the Defendants were not entitled to. As such, the government has been damaged by the failure of the Defendants to repay the amounts to which they had no legitimate claim. By reason of these payments, the United States has been damaged and continues to be damaged in a substantial amount.

56) The Defendants wrongfully withheld monies from the listed states and by withholding this money impaired the obligations of those states to repay the Federal Government for sums which they had an obligation to return. As such, the Defendants UHS and Phil Polillo caused and indirect reverse false claim and are liable to the States and the Federal Government for this claim.

## COUNT V
### CLAIM BY THE UNITED STATES FOR UNJUST ENRICHMENT

57) This is a common law claim by the United States for unjust enrichment. This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

58) Plaintiff realleges and incorporates by reference paragraphs 1 through 57 as though fully set forth herein.

59) By submitting claims for payment for residence services which were provided to federal health program beneficiaries and to federal employee health benefits program beneficiaries without having provided said services for the beneficiaries, the Defendant received certain Government funds to which it was not entitled.

60) As a result of the acts set forth in this count, the Defendant was unjustly enriched at the expense of the United States, under circumstances dictating that, in equity and good conscience, the money should be returned to the United States.

## COUNT VI
### CLAIM BY THE UNITED STATES FOR UNJUST ENRICHMENT

61) This is a common law claim by the United States for unjust enrichment. This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

62) Plaintiff realleges and incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63) By submitting claims for payment which were for services provided by unqualified and under qualified supportive personnel the Defendant received certain Government funds to which it was not entitled.

64)  As a result of the acts set forth in this count, the Defendant was unjustly enriched at the expense of the United States, under circumstances dictating that, in equity and good conscience, the money should be returned to the United States.

## COUNT VII
### CLAIM BY THE UNITED STATES FOR UNJUST ENRICHMENT

65)  This is a common law claim by the United States for unjust enrichment. This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

66)  Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as though fully set forth herein.

67)  By submitting claims for payment for services not provided, the Defendant received certain Government funds to which it was not entitled.

68)  As a result of the acts set forth in this count, the Defendant was unjustly enriched at the expense of the United States, under circumstances dictating that, in equity and good conscience, the money should be returned to the United States.

## COUNT VIII
### CLAIM BY THE UNITED STATES FOR PAYMENT BY MISTAKE

69)  This is a common law claim by the United States for payment by mistake. This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

70)  Plaintiff realleges and incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

71)  By submitting claims for payment for resident services which were provided to federal health program beneficiaries and to federal employee health benefits

program beneficiaries without having obtained a certification for care of the beneficiaries, the Defendant caused the United States to pay the Defendant certain Government funds to which it was not entitled.

## COUNT IX
### CLAIM BY THE UNITED STATES FOR PAYMENT BY MISTAKE

72) This is a common law claim by the United States for payment by mistake. This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

73) Plaintiff realleges and incorporates by reference paragraphs 1 through 70 as though fully set forth herein.

74) By submitting claims for payment which were for services provided under falsified certifications, the Defendant caused the United States to pay the Defendant certain Government funds to which it was not entitled.

75) At the time the United States made such payments, the United States was unaware of the Defendant's conduct described in this Count. The United States erroneous belief was material to making the payments at issue. Had the United States known of the conduct at issue, it would not have made the payments it did.

76) As a result of the acts set forth in this Count, the United States has been damaged in an amount to be determined at trial, and is entitled to recover these monies which were paid to the Defendant by mistake.

## COUNT X
### CLAIM BY THE UNITED STATES FOR PAYMENT BY MISTAKE

77) This is a common law claim by the United States for payment by mistake. This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

78) Plaintiff realleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

79) By submitting claims for payment for services not provided, the Defendant caused the United States to pay the Defendant certain Government funds to which it was not entitled.

80) At the time the United States made such payments, the United States was unaware of the Defendant's conduct described in this Count. The United States erroneous belief was material to making the payments at issue. Had the United States known of the conduct at issue, it would not have made the payments it did.

81) As a result of the acts set forth in this Count, the United States has been damaged in an amount to be determined at trial, and is entitled to recover these monies which were paid to the Defendant by mistake.

## COUNT XI
## ARKANSA FALSE CLAIMS

82) Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 81 as if fully set forth herein. This Count is brought by relators in the name of the State of Arkansas under the qui tam provisions of the Arkansas Medicaid Fraud False Claims Act A.C.A. § 20-77-901 et seq.

83) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Akransas. Said facilities were participants in the drug kickback programs with at least one or more drugs being ordered by

52

the facility to perpetuate the corporate kickback scheme with the drugs being paid for by Arkansas Medicaid and Medicaid Assistance programs.

84) By virtue of the above-described acts, among others, defendant UHS and Phil Polillo knowingly presented or caused to be presented to the State of Arkansas, false or fraudulent claims for payment or approval, in violation of §12651 (1).

85) Defendant UHS, and Phil Polillo as the director thereof, also caused bills to be submitted to state healthcare programs for quantities of drugs that were not being used by the patients to which they were being billed and claimed money for items and services that were not provided to the patient.

86) By virtue of the above-described acts, among others, defendant knowingly made, used, or caused to be made or used false records or statements to get a false claim paid or approved by the State of Arkansas, in violation of A.C.A § 20-77-902.

87) By virtue of the above-described acts, among others, defendant UHS knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease their obligation to pay or transmit money or property to the State of Arkansas, in violation of A.C.A § 20-77-902.

88) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Arkansas.

89) Defendants Baxter International, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Arkansas by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated A.C.A § 20-77-901 and are liable to the State of Arkansas for damages arising therefrom.

## COUNT XII
## CALIFORNIA FALSE CLAIMS ACT

90) Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 89 as if fully set forth herein. This Count is brought by relators in the name of the State of California under the qui tam provisions of the California False Claims Act, California Government Code §12650 et seq.

91) Defendant UHS along Phil Polillo and its other agents, at all times relevant to this action, operated facilities in the State of California. Said facilities were participants in the drug kickback programs with at least one or more drugs being ordered by the facility to perpetuate the corporate kickback scheme with the drugs being paid for by California's Medicaid and Medicaid Assistance programs.

92) By virtue of the above-described acts, among others, defendants UHS and Phil Polillo.

knowingly presented or caused to be presented to the State of California,

54

false or fraudulent claims for payment or approval, in violation of §12651 (1).

93) By virtue of the above-described acts, among others, defendant knowingly made, used, or caused to be made or used false records or statements to get a false claim paid or approved by the State of California, in violation of § 12651(2).

94) By virtue of the above-described acts, among others, defendant UHS knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease their obligation to pay or transmit money or property to the State of California, in violation of § 12651(7).

95) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of California.

96) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of California by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated § 12651(7) and are liable to the State of California for damages arising therefrom.

**COUNT XIII**

## DELAWARE FALSE CLAIMS AND REPORTING ACT

97) Plaintiffs incorporate by reference and re-allege Paragraphs I to 96 as if fully set forth herein. This Count is brought by relators in the name of the State of Delaware under the qui tam provisions of the Delaware False Claims and Reporting Act, Delaware Statute Title 6, Chapter 121 § 1201 et seq.

98) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Delaware. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Delaware's Medicaid and Medical Assistance program.

99) By virtue of the above-described acts, among others, defendant UHS knowingly presented or caused to be presented to an officer or employee of the State of Delaware false or fraudulent claims for payment or approval, in violation of §1201(1).

100) By virtue of the above-described acts, among others, defendant knowingly made, used, or caused to be made or used, directly or indirectly, false records or statements to get a false or fraudulent claim paid or approved by the State of Delaware, in violation of § 1201(2).

101) By virtue of the above-described acts, among others, defendant UHS knowingly made, used, or caused to be made or used, false records and statements to conceal, avoid or describe an obligation to pay or transmit money to the State of Delaware, in violation of § 1201(7).

102) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Delaware.

103) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Delaware by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §1201(1) and are liable to the State of Delaware for damages arising therefrom.

## COUNT XIV
## DISTRICT OF COLUMBIA FALSE CLAIMS ACT

104) Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 103 as if fully set forth herein. This Count is brought by relators in the name of the District of Columbia under the qui tam provisions of D.C. Stat. § 2-308.03 et seq. and D.C. Code Ann. § 1-119.13 et seq.

105) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the District of Columbia. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through District of Columbia's Medicaid

and Medical Assistance program.

106) By virtue of the above-described acts, among others, defendant UHS knowingly presented or caused to be presented, directly or indirectly to officers, employees or agents of the District of Columbia, false or fraudulent claims for payment or approval, in violation of §2-308.14(1).

107) By virtue of the above-described acts, among others, defendant UHS knowingly made, used or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the District of Columbia, in violation of §2-308.14(2).

108) By virtue of the above-described acts, among others, defendant knowingly made or used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the District of Columbia, in violation of §2-308.14(7).

109) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the District Of Columbia.

110) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the District of Columbia by other parties, including Defendant UHS, through their illegal and unlawful kickback

scheme. As such, they have violated §2-308.14(1) and are liable to the District of Columbia for damages arising therefrom.

## COUNT XV
## FLORIDA FALSE MEDICAID CLAIMS ACT

111) Plaintiffs incorporate by reference and re-allege paragraphs 1 to 110 as if fully set forth herein. This Count is brought by relators in the name of the State of Florida under the qui tam provisions of the Florida False Claims Act, §68.081 and 68.082 et seq.

112) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Florida. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Florida's Medicaid and Medical Assistance program.

113) By virtue of the above-described acts, among others, defendants UHS and Phil Polillo.

knowingly presented or caused to be presented, directly or indirectly, to officers, employees or agents of the State of Florida, false or fraudulent claims for payment or approval, in violation of §68.082(2)(a).

114) By virtue of the above-described acts, among others, defendant UHS knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of

Florida, in violation of §68.082(2)(b).

115) By virtue of the above-described acts, among others, defendant knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to an agency of the State of Florida, in violation of §68.082(2)(g).

116) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Florida.

117) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Florida by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §68.082(2) and are liable to the State of Florida for damages arising therefrom.

## COUNT XVI
## GEORGIA FALSE CLAIMS ACT

118) Plaintiffs incorporate by reference and re-allege paragraphs 1 to 117 as if fully set forth herein. This Count is brought by relators in the name of the State of Georgia under the qui tam provisions of the Georgia False Medical

Claims Act, §49-4-168.1 et seq.

119) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Georgia. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Georgia's Medicaid and Medical Assistance program.

120) By virtue of the above-described acts, among others, defendant UHS knowingly presented or caused to be presented to the Georgia Medicaid program false or fraudulent claims for payment or approval, in violation of §49-4-68.1(a)(1).

121) By virtue of the above-described acts, among others, defendants UHS and Phil Polillo knowingly made, uses, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Georgia Medicaid program, in violation of §49-4-168.1(a)(2).

122) By virtue of the above-described acts, among others, defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay, repay or transmit money or property to the State of Georgia, in violation of §49-4-168.1(a)(7).

123) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Georgia.

124) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Georgia by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §49-4-68.1(a) and are liable to the State of Georgia for damages arising therefrom.

## COUNT XVII
## ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT

125) Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 123 as if fully set forth herein. This Count is brought by relators in the naive of the State of Illinois under the qui tam provisions of 740 ILCS 175/4 for defendant's violation of 740 1LCS 175/3 and 740 111. Comp. Stat. Ann. §175/1 et seq.

126) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Illinois. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Illinois' Medicaid and Medical Assistance program.

127) By virtue of the above-described acts, among others, defendant UHS and Phil Polillo,

Inc. knowingly presented or caused to be presented to officers or employee of

the State of Illinois false or fraudulent claims for payment or approval, in violation of 740 Ill. compiled statutes 17513(1).

128) By virtue of the above-described acts, among others, defendant UHS knowingly made, used or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the State of Illinois in violation of § 17513(2).

129) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Illinois.

130) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Illinois by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated 740 Ill. compiled statutes 17513(1) and are liable to the State of Illinois for damages arising therefrom.


## COUNT XVIII
## LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGITY LAW

131) Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 130 as if fully set forth herein. This Count is brought by relators in the name of the State of

Louisiana under the qui tarn provisions of the Louisiana Medical Assistance Programs Integrity Law. LA. REV. STAT. ANN. §46:438.1 et seq.

132) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Louisiana. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Louisiana's Medicaid and Medical Assistance program.

133) By virtue of the above-described acts, among others, defendant UHS knowingly presented or caused to be presented a false or fraudulent claim for payment or approval to the State of Louisiana, in violation of §46:438.3A.

134) By virtue of the above-described acts, among others, defendant UHS knowingly engaged in misrepresentation to obtain, or attempt to obtain, payment from the State of Louisiana's medical assistance programs funds, in violation of §46:438.3B.

135) By virtue of the above-described acts, among others, defendant knowingly submitted a claim for goods, services, or supplies which were medically unnecessary or which were of substandard quality or quantity, in violation of §46:438.3D.

136) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Louisiana.

137) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Louisiana by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §46:438.3 and are liable to the State of Louisiana for damages arising therefrom.

## COUNT XIX
## MASSACHUSETTS FALSE CLAIMS ACT

138) Plaintiffs incorporate by reference and re-allege paragraphs 1 to 137 as if fully set forth herein. This Count is brought by relators in the name of the Commonwealth of Massachusetts under the qui tans provisions of the Massachusetts False Claims Act, Mass. Ann. Laws Ch. 12, §5 et seq.

139) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the Commonwealth of Massachusetts. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Commonwealth of Massachusetts' Medicaid and Medical Assistance program.

140) By virtue of the above-described acts, among others, defendant UHS and Phil Polilloknowingly presented or caused to be presented to the Commonwealth of Massachusetts false or fraudulent claims for payment or approval, in

65

violation of Ch.12, §5B(1).

141) By virtue of the above-described acts, among others, defendants UHS and Phil Polillo knowingly made, used, or caused to be made or used, false records or statements to obtain payment or approval of a claim by the Commonwealth of Massachusetts, in violation of Ch. 12, §5B(2).

142) By virtue of the above-described acts, defendants knowingly made. used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or to transmit money or property to the Commonwealth of Massachusetts, in violation of Ch. 12, §5B(8).

143) Defendants Baxter International, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the Commonwealth of Massachusetts.

144) Defendants Baxter International, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the Commonwealth off Massachusetts by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated Ch.12, §5B(1) and are liable to the Commonwealth of Massachusetts for damages arising therefrom.

**COUNT XX**

66

## MICHIGAN FALSE CLAIMS ACT

145) Plaintiffs incorporate by reference and re-allege paragraphs 1 to 144 as if fully set forth herein. This Count is brought by relators in the name of the State of Michigan under the qui tam provisions of the Michigan Medicaid False Claims Act. §§ 400.601 and Michigan Health Care False Claims Act §752.1001 et seq.

146) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Michigan. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Michigan's Medicaid and Medical Assistance program.

147) By virtue of the above-described acts, among others, defendant UHS and Phil Polilloknowingly made or presented, or caused to be made or presented, to employees or officers of the State of Michigan, false or fraudulent claims for payment or approval, in violation of §400.607(1), and §752.1001, et. seq.

148) By virtue of the above-described acts, defendant knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Michigan, in violation of §400.607(3) and §752.1001 et seq.

149) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate

and distribute pharmaceuticals within the State of Michigan.

150) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Michigan by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §400.607(1), and §752.1001, et. seq. and are liable to the State of Michigan for damages arising therefrom.

## COUNT XXI
## NEVADA FALSE CLAIMS ACT

151) Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 150 as if fully set forth herein. This Count is brought by relators in the name of the State of Nevada under the qui tarn provisions of Nevada Rev. Stat. §357.010 et seq., "Submission of False Claims to State or Local Government."

152) Defendant UHS along with its agents, at all times relevant to this action, operated facilities in the State of Nevada. Said facilities were participants in the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Nevada's Medicaid and Medical Assistance program.

153) By virtue of the above-described acts, among others, defendants UHS and Phil Polillo knowingly presented or caused to be presented to the State of Nevada,

false or fraudulent claims for payment or approval, in violation of §357.040(l)(a).

154) By virtue of the above-described acts, among others, defendants UHS and Phil Polillo knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Nevada, in violation of §357.040(l)(b).

155) By virtue of the above-described acts, defendant knowingly made or used. or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of Nevada, in violation of §357.040(1)(g).

156) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Nevada.

157) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck. Inc. knowingly and willfully caused false claims to be submitted to the State of Nevada by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §357.040(l) and are liable to the State of Nevada for damages arising therefrom.

**COUNT XXII**
**NEW JERSEY FALSE CLAIMS ACT**

158) Plaintiffs incorporate by reference and re-allege paragraphs 1 to 192 as

if fully set forth herein. This Count is brought by relators in the name of the

State of New Jersey under the qui tam provisions of the New Jersey False

Claims Act.

159) Defendant UHS along with its agents, at all times relevant to this action,

operated facilities in the State of New Jersey. Said facilities were participants

in the drug kickback programs with at least one or more of the drugs being

ordered by the facility and paid for through New Jersey's Medicaid and

Medical Assistance program.

160) By virtue of the above-described acts, among others, defendant UHS and Phil

Poliloknowingly presented or caused to be presented to employees, officers or

agents of the State of New Jersey, false or fraudulent claims for payment or

approval, in violation of §2A:32C-3a.

161) By virtue of the above-described acts, among others, defendant UHS and Phil

Polillo,

Inc. knowingly made, used, or caused to be made or used, false records or

statements to get false or fraudulent claims paid or approved by the State of

New Jersey, in violation of §2A:3 32C-3b.

162) By virtue of the above-described acts, among others, defendant knowingly

made, used, or caused to be made or used a false record or statement to

conceal, avoid, or decrease an obligation to pay or transmit money or property

to the State of New Jersey, in violation of §2A:32C-3g.

163) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc.

(HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co.,

Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate

and distribute pharmaceuticals within the State of New Jersey.

164) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc.

(HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co.,

Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly

and willfully caused false claims to be submitted to the State of New Jersey by

other parties, including Defendant UHS, through their illegal and unlawful kickback

scheme. As such, they have violated §2A:32C-3 and are liable to the State of New

Jersey for damages arising therefrom.


## COUNT XXIII
## OKLAHOMA MEDICAID FALSE CLAIMS ACT

165) Plaintiffs incorporate by reference and re-allege paragraphs 1 to 163 as

if fully set forth herein. This Count is brought by relators in the name of the

State of 81 Oklahoma under the qui tam provisions Oklahoma Medicaid False

Claims Act, Title 63 §5053 and § § 5054 et seq.

166) Defendant UHS along with its agents, at all times relevant to this action,

operated facilities in the State of Oklahoma. Said facilities were participants in

71

the drug kickback programs with at least one or more of the drugs being ordered by the facility and paid for through Oklahoma's Medicaid and Medical Assistance program.

167) By virtue of the above-described acts, among others, defendant UHS knowingly presented or caused to be presented to officers or employees of the State of Oklahoma, false or- fraudulent claims for payment or approval, in violation of §63-5053(B)1.

168) By virtue of the above-described acts, among others, defendant UHS knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Oklahoma, in violation of §63-5053(B)2.

169) By virtue of the above-described acts, defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Oklahoma, in violation of §63-5053(B)7.

170) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Oklahoma.

171) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly

and willfully caused false claims to be submitted to the State of Oklahoma by other

parties, including Defendant UHS, through their illegal and unlawful kickback

scheme. As such, they have violated §63-5053(B) and are liable to the State of

Oklahoma for the damages arising therefrom.

## COUNT XXIV
## TENNESSEE FALSE CLAIMS ACT

172) Plaintiffs incorporate by reference and re-allege Paragraphs I to 170 as if

fully set forth herein. This Count is brought by relators in the name of the State

of Tennessee under the qui tam provisions of the Tennessee Medicaid False

Claims Act; Tenn. Stat. §75-1-181 et seq and §4-18-101 et seq.

173) Defendant UHS along with its agents, at all times relevant to this action,

operated facilities in the State of Tennessee. Said facilities were participants in

the drug kickback programs with at least one or more of the drugs being

ordered by the facility and paid for through Tennessee's Medicaid and Medical

Assistance program.

174) By virtue of the above-described acts, among others, defendant UHS

knowingly presented or caused to be presented, to officers or employees of the

State of Tennessee, false or fraudulent claims for payment or approval, in

violation of §4-18-103(1).

175) By virtue of the above-described acts, among others, defendant UHS

knowingly made, used, or caused to be made or used, false records and

statements to get false or fraudulent claims paid or approved by the State of

Tennessee, in violation of §4-18-103(2).

176) By virtue of the above-described acts, defendant knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Tennessee, in violation of §4-18-103(7).

177) Defendants Baxter International, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Tennessee.

178) Defendants Baxter International, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Tennessee by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §4-18-103 and are liable to the State of Tennessee for damages arising therefrom.

## COUNT XXV
## TEXAS MEDICAID FRAUD PREVENTION ACT

179) Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 177 as if fully set forth herein. This Count is brought by relators in the name of the State of Texas under the qui tarn provisions of the Texas Medicaid Fraud Prevention

Act, Texas Human Resources Code, Ch. 36, §36.001-36.117 et seq. Relator
also seeks relator awards under Texas Gov't Code Ann. §531.101 et seq.

180) Defendant UHS along with its agents, at all times relevant to this action,
operated facilities in the State of Texas. Said facilities were participants in the
drug kickback programs with at least one or more of the drugs being ordered
by the facility and paid for through Texas's Medicaid and Medical Assistance
program.

181) By virtue of the above-described acts, among others, defendant UHS,
knowingly made or caused to be made, directly or indirectly to employees,
officers and or agents of the State of Texas, a false statement or
misrepresentation of a material fact to permit UHS and Phil Polillo to receive
payment for products and services under the Medicaid program that was not
authorized, in violation of §316.002(l).

182) By virtue of the above-described acts, Defendant UHS knowingly concealed or
failed to disclose information that permitted Defendant UHS to receive a
payment under the Medicaid program that it was not authorized to receive, in
violation of §36.002(2).

183) By virtue of the above-described acts, Defendant UHS knowingly made,
caused to be made, induced or sought to induce the making of a false statement
or misrepresentation of material fact concerning information required to be
provided by federal law pertaining to the Medicaid program, in violation of
§36.002(4).

184) By virtue of the above-described acts, Defendant UHS knowingly made a claim under the Medicaid program in Texas for amounts of drugs which had not been given to patients and were substantially inappropriate when compared to generally recognized standards within the industry, in violation of §36.002(7).

185) By virtue of the above-described acts, among others, defendant knowingly made, used, or caused the making or use of a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Texas under the Medicaid program, in violation of §36.002(12).

186) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. all operate and distribute pharmaceuticals within the State of Texas.

187) Defendants Baxter Internation, Inc. (BAX), Astellas Pharma US, Inc., Hospira, Inc. (HSP), Amerisource Bergen, Corp. (ABC), Sanofi-Aventis (SNY), Merck and Co., Inc. (MRK), Astra Zeneca (AZN), and Centrocor Ortho Bioteck, Inc. knowingly and willfully caused false claims to be submitted to the State of Texas by other parties, including Defendant UHS, through their illegal and unlawful kickback scheme. As such, they have violated §316.002 and are liable to the State of Texas for damages arising therefrom.

## X.   <u>PRAYER FOR RELIEF</u>

188) Pursuant to the Federal False Claims Act, the United States and relators request treble damages, a penalty of $5,000 to $11,000 per claim, and all attorneys' fees and costs allowed under the Act.

189) Pursuant to the false claim acts of the states, Commonwealths and District of Columbia, the said political entities and relators request treble damages, all per-claim penalties, and attorneys' fees and costs for plaintiffs and relators.

190) Relators request an appropriate share of the recoveries for the United States and the various states, Commonwealths and District of Columbia, pursuant to the federal and state false claims acts described above.

## XI.   <u>REQUEST FOR TRIAL BY JURY</u>

Pursuant to Rule 38 of the federal Rules of civil Procedure, the plaintiff hereby demands trial by jury.

Respectfully Submitted,

HAYES LEGAL GROUP, P.C.

<u>c/o GAYLON C. HAYES</u>
GAYLON C. HAYES  OBA #14492
6805 South Western Ave., Suite 500

77

Oklahoma City, OK  73139
Telephone:  405/616-5045
Facsimile:  405/616-5062
ATTORNEY FOR RELATORS

Exhibits to Relators Complaint

1. Spreadsheet of Cost Cutting Savings for Pharmacies Of UHS
2. Meidcare Participant Enrollment Application – UHS
3. Chargemaster Email – Kiner
4. UHS Accounting Department Cost Cutting Pharmaceutical Spreadsheet
5. UHS Email Regarding Cost Cutting Measures and Pharmaceutical Incentives
6. Zemuron Documents
   a. List of Patients with Zemuron Charges at St. Mary's Hospital
   b. Patient Records and Documentation of dosages and administration for St. Mary's Hospital
7. Lovenox Documents
   a. UHS Corporate Correspondence Regarding Lovenox Kickbacks
   b. Patient Records and Documentation Demonstrating Use with Full Billing
8. Merck Documents
9. Baxter Anesthetic Gases
   a. UHS Corporate Correspondence Regarding Baxter Anesthetic Gases
   b. Correspondence of UHS with Baxter
10. Procrit Documents
    a. UHS Corporate Correspondence Regarding Procrit Kickbacks
    b. Wholesaler and UHS Credit Memo's
11. NitroQuick Documents
    a. UHS Corporate Correspondence Regarding Nitroquick Kickbacks
    b. Patient Records and Documentation Demonstrating Use with Full Billing while patients getting "freebies"
12. Gamma Camera Documents
    a. UHS Corporate Correspondence Regarding Adenoscan Kickbacks
    b. Amerisource Bergen Invoices and Orders for Adenoscan
    c. Patient Records and Documentation Demonstrating of Billing and Dosage Calculations for Each Party
13. Labetalol Documents
14. Ketamine Documents
    a. UHS Corporate Correspondence Regarding Ketamine Kickbacks
    b. UHS Chargemaster Screen Capture of Ketamine Billing Options
    c. List of Patients Charged for Ketamine - Examples
    d. Patient Records and Documentation Demonstrating of Billing and Dosage Calculations for Each Party
15. UHS/ ABC Prime Vendor Contract

**UHS**

**Broadlane Impact Analysis**

Data Dates

**SANOFI AVENTIS JANUARY IMPACT**

10/25/2006 to 1/23/2007

SET PRINT AREA BEFORE YOU PRINT

COT · (All)

| Name | NDC_Desc | Data | Total | % Impact |
|---|---|---|---|---|
| AIKEN REGIONAL MEDICAL CENTER | 0007/50062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ML DISP SYRIN 12 X 0.4ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $289,628.88 | |
| | | Sum of Future Annualized Cost | $304,316.22 | |
| | | Sum of Impact Annualized | $14,491.34 | 5.0% |
| AUBURN GENERAL HOSPITAL | 0007/50062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ML DISP SYRIN 12 X 0.4ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $46,524.70 | |
| | | Sum of Future Annualized Cost | $48,850.94 | |
| | | Sum of Impact Annualized | $2,326.24 | 5.0% |
| | 0007/50062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $23,163.32 | |
| | | Sum of Future Annualized Cost | $24,321.49 | |
| | | Sum of Impact Annualized | $1,158.17 | 5.0% |
| | 0007/50062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE   10'S,AUTO | Sum of Previous Annualized Cost | $16,570.60 | |
| | | Sum of Future Annualized Cost | $17,399.13 | |
| | | Sum of Impact Annualized | $828.53 | 5.0% |
| | 0007/50062430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $16,505.76 | |
| | | Sum of Future Annualized Cost | $17,332.10 | |
| | | Sum of Impact Annualized | $826.34 | 5.0% |
| | 0007/50062280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $4,991.49 | |
| | | Sum of Future Annualized Cost | $5,241.06 | |
| | | Sum of Impact Annualized | $249.57 | 5.0% |
| | 00087/2291201 - LANTUS (INSULIN GLARGINE;HUM,REC/ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $4,964.70 | |
| | | Sum of Future Annualized Cost | $5,212.94 | |
| | | Sum of Impact Annualized | $248.24 | 5.0% |
| | 00086222033 - LANTUS (INSULIN GLARGINE;HUM,REC/ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $4,481.06 | |
| | | Sum of Future Annualized Cost | $4,705.11 | |
| | | Sum of Impact Annualized | $224.05 | 5.0% |
| | 0007/50062630 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL VIAL 3ML MULTI USE VIAL | Sum of Previous Annualized Cost | $2,864.74 | |
| | | Sum of Future Annualized Cost | $3,007.98 | |
| | | Sum of Impact Annualized | $143.24 | 5.0% |
| AUBURN GENERAL HOSPITAL Sum of Previous Annualized Cost | | | $120,066.62 | |
| AUBURN GENERAL HOSPITAL Sum of Future Annualized Cost | | | $126,069.95 | |
| AUBURN GENERAL HOSPITAL Sum of Impact Annualized | | | $6,003.33 | 5.0% |
| CENTRAL MONTGOMERY MEDICAL CENTER | 0007/50062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ML DISP SYRIN 12 X 0.4ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $36,524.52 | |
| | | Sum of Future Annualized Cost | $38,350.75 | |
| | | Sum of Impact Annualized | $1,826.23 | 5.0% |
| | 0007/50062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $29,793.98 | |
| | | Sum of Future Annualized Cost | $31,283.68 | |
| | | Sum of Impact Annualized | $1,489.70 | 5.0% |
| | 0007/50062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE   10'S,AUTO | Sum of Previous Annualized Cost | $27,498.25 | |
| | | Sum of Future Annualized Cost | $28,871.06 | |
| | | Sum of Impact Annualized | $1,372.81 | 5.0% |
| | 0007/50062430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $23,339.28 | |
| | | Sum of Future Annualized Cost | $24,506.25 | |
| | | Sum of Impact Annualized | $1,166.96 | 5.0% |
| | 0007/50062280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE   10'S,AL | Sum of Previous Annualized Cost | $23,108.87 | |
| | | Sum of Future Annualized Cost | $24,264.10 | |
| | | Sum of Impact Annualized | $1,155.43 | 5.0% |
| | 0007/50062630 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL VIAL 3ML MULTI USE VIAL | Sum of Previous Annualized Cost | $1,720.41 | |
| | | Sum of Future Annualized Cost | $1,806.43 | |
| | | Sum of Impact Annualized | $86.02 | 5.0% |
| | 0008/8222033 - APIDRA (INSULIN GLULISINE) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $175.24 | |
| | | Sum of Future Annualized Cost | $184.00 | |
| | | Sum of Impact Annualized | $8.76 | 5.0% |
| CENTRAL MONTGOMERY MEDICAL CENTER Sum of Previous Annualized Cost | | | $142,150.35 | |
| CENTRAL MONTGOMERY MEDICAL CENTER Sum of Future Annualized Cost | | | $149,266.27 | |
| CENTRAL MONTGOMERY MEDICAL CENTER Sum of Impact Annualized | | | $7,107.92 | 5.0% |

PENGAD 800-631-6989

EXHIBIT

# UHS

| Facility / Subtotal | NDC – Product | Measure | Value | % |
|---|---|---|---|---|
| DEL AMO HOSPITAL | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,769.65 | |
| | | Sum of Future Annualized Cost | $1,858.14 | |
| | | Sum of Impact Annualized | $88.48 | 5.0% |
| DEL AMO HOSPITAL Sum of Previous Annualized Cost | | | $1,769.65 | |
| DEL AMO HOSPITAL Sum of Future Annualized Cost | | | $1,858.14 | |
| DEL AMO HOSPITAL Sum of Impact Annualized | | | $88.48 | 5.0% |
| DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL | 0007506022040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ML DISP SYRIN 12 X 0.4ML SYRINGE 10'S AUTO | Sum of Previous Annualized Cost | $450,541.71 | |
| | | Sum of Future Annualized Cost | $473,068.79 | |
| | | Sum of Impact Annualized | $22,527.09 | 5.0% |
| | 0007506022280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $194,562.79 | |
| | | Sum of Future Annualized Cost | $204,368.73 | |
| | | Sum of Impact Annualized | $9,731.34 | 5.0% |
| | 0007506021600 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $136,357.48 | |
| | | Sum of Future Annualized Cost | $143,175.36 | |
| | | Sum of Impact Annualized | $6,817.87 | 5.0% |
| | 0007506023000 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Previous Annualized Cost | $134,203.83 | |
| | | Sum of Future Annualized Cost | $140,913.81 | |
| | | Sum of Impact Annualized | $6,710.18 | 5.0% |
| | 0007506024300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3ML DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $80,732.85 | |
| | | Sum of Future Annualized Cost | $84,769.49 | |
| | | Sum of Impact Annualized | $4,036.64 | 5.0% |
| | 0008226912201 - LOVENOX (ENOXAPARIN SODIUM) 120 mg/0.8 mL DISP SYRIN P/F SYRINGE | Sum of Previous Annualized Cost | $34,703.66 | |
| | | Sum of Future Annualized Cost | $36,438.85 | |
| | | Sum of Impact Annualized | $1,735.18 | 5.0% |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $15,519.78 | |
| | | Sum of Future Annualized Cost | $16,295.77 | |
| | | Sum of Impact Annualized | $775.99 | 5.0% |
| DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL Sum of Previous Annualized Cost | | | $1,046,885.91 | |
| DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL Sum of Future Annualized Cost | | | $1,099,020.20 | |
| DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL Sum of Impact Annualized | | | $52,314.30 | 5.0% |
| DOCTORS HOSPITAL OF LAREDO | 0007506022040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $57,264.30 | |
| | | Sum of Future Annualized Cost | $60,117.01 | |
| | | Sum of Impact Annualized | $2,862.71 | 5.0% |
| | 0007506022280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $26,605.11 | |
| | | Sum of Future Annualized Cost | $27,935.36 | |
| | | Sum of Impact Annualized | $1,330.26 | 5.0% |
| | 0007506021600 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $21,717.84 | |
| | | Sum of Future Annualized Cost | $22,803.73 | |
| | | Sum of Impact Annualized | $1,085.89 | 5.0% |
| | 0007506023000 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Previous Annualized Cost | $16,243.19 | |
| | | Sum of Future Annualized Cost | $17,055.35 | |
| | | Sum of Impact Annualized | $812.16 | 5.0% |
| | 0007506024300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3ML DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $4,227.38 | |
| | | Sum of Future Annualized Cost | $4,438.75 | |
| | | Sum of Impact Annualized | $211.37 | 5.0% |
| DOCTORS HOSPITAL OF LAREDO Sum of Previous Annualized Cost | | | $153,635.13 | |
| DOCTORS HOSPITAL OF LAREDO Sum of Future Annualized Cost | | | $161,316.89 | |
| DOCTORS HOSPITAL OF LAREDO Sum of Impact Annualized | | | $7,681.76 | 5.0% |
| EDINBURG REGIONAL MEDICAL CENTER | 0007506024300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3ML DISP SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $73,422.06 | |
| | | Sum of Future Annualized Cost | $77,093.16 | |
| | | Sum of Impact Annualized | $3,671.10 | 5.0% |
| | 0007506022280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $62,322.06 | |
| | | Sum of Future Annualized Cost | $65,438.16 | |
| | | Sum of Impact Annualized | $3,116.10 | 5.0% |
| | 0007506022280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $38,719.76 | |
| | | Sum of Future Annualized Cost | $40,665.75 | |
| | | Sum of Impact Annualized | $1,935.99 | 5.0% |

UHS

| Facility / Item | Measure | Amount | % |
|---|---|---|---|
| EDINBURG REGIONAL MEDICAL CENTER 0007526913011201 - LOVENOX (ENOXAPARIN SODIUM) 120 mg/0.8 ml, DISP SYRIN 12 X 0.8ML SYRINGE  P/F, 10'S,AL | Sum of Previous Annualized Cost | $32,069.29 | |
| | Sum of Future Annualized Cost | $33,672.76 | |
| | Sum of Impact Annualized | $1,603.46 | 5.0% |
| EDINBURG REGIONAL MEDICAL CENTER 0007526912160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6ml, DISP SYRIN 12 X 0.6ML SYRINGE  10'S,AL | Sum of Previous Annualized Cost | $17,323.40 | |
| | Sum of Future Annualized Cost | $18,189.57 | |
| | Sum of Impact Annualized | $866.17 | 5.0% |
| EDINBURG REGIONAL MEDICAL CENTER 0007526911501 - LOVENOX (ENOXAPARIN SODIUM) 150 mg/mL, DISP SYRIN 12 X 1ML SYRINGE  P/F, 10'S,AL | Sum of Previous Annualized Cost | $7,190.41 | |
| | Sum of Future Annualized Cost | $7,549.93 | |
| | Sum of Impact Annualized | $359.52 | 5.0% |
| EDINBURG REGIONAL MEDICAL CENTER 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $6,988.55 | |
| | Sum of Future Annualized Cost | $7,337.98 | |
| | Sum of Impact Annualized | $349.43 | 5.0% |
| EDINBURG REGIONAL MEDICAL CENTER Sum of Previous Annualized Cost | Sum of Previous Annualized Cost | $238,035.62 | |
| EDINBURG REGIONAL MEDICAL CENTER Sum of Future Annualized Cost | Sum of Future Annualized Cost | $249,937.90 | |
| EDINBURG REGIONAL MEDICAL CENTER Sum of Impact Annualized | Sum of Impact Annualized | $11,901.78 | 5.0% |
| FAIRMOUNT BEHAVIORAL HEALTH SYSTEM 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $2,003.12 | |
| | Sum of Future Annualized Cost | $2,103.27 | |
| | Sum of Impact Annualized | $100.16 | 5.0% |
| FAIRMOUNT BEHAVIORAL HEALTH SYSTEM Sum of Previous Annualized Cost | Sum of Previous Annualized Cost | $2,003.12 | |
| FAIRMOUNT BEHAVIORAL HEALTH SYSTEM Sum of Future Annualized Cost | Sum of Future Annualized Cost | $2,103.27 | |
| FAIRMOUNT BEHAVIORAL HEALTH SYSTEM Sum of Impact Annualized | Sum of Impact Annualized | $100.16 | 5.0% |
| FOREST VIEW 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,265.80 | |
| | Sum of Future Annualized Cost | $1,329.09 | |
| | Sum of Impact Annualized | $63.29 | 5.0% |
| FOREST VIEW Sum of Previous Annualized Cost | Sum of Previous Annualized Cost | $1,265.80 | |
| FOREST VIEW Sum of Future Annualized Cost | Sum of Future Annualized Cost | $1,329.09 | |
| FOREST VIEW Sum of Impact Annualized | Sum of Impact Annualized | $63.29 | 5.0% |
| FORT DUNCAN REGIONAL MEDICAL CE 0007526912040 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL VIAL 3ML  MULTI USE VIAL | Sum of Previous Annualized Cost | $22,255.06 | |
| | Sum of Future Annualized Cost | $23,367.81 | |
| | Sum of Impact Annualized | $1,112.76 | 5.0% |
| FORT DUNCAN REGIONAL MEDICAL CENTER 0007526912030 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ml, DISP SYRIN 12 X 0.4ML SYRINGE  10'S,AL | Sum of Previous Annualized Cost | $18,134.10 | |
| | Sum of Future Annualized Cost | $19,040.81 | |
| | Sum of Impact Annualized | $906.71 | 5.0% |
| FORT DUNCAN REGIONAL MEDICAL CENTER 0007526912430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3ml, DISP SYRIN 12 X 0.3ML SYRINGE  10'S,AL | Sum of Previous Annualized Cost | $7,244.73 | |
| | Sum of Future Annualized Cost | $7,606.96 | |
| | Sum of Impact Annualized | $362.24 | 5.0% |
| FORT DUNCAN REGIONAL MEDICAL CENTER 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,966.18 | |
| | Sum of Future Annualized Cost | $2,064.49 | |
| | Sum of Impact Annualized | $98.31 | 5.0% |
| FORT DUNCAN REGIONAL MEDICAL CENTER Sum of Previous Annualized Cost | Sum of Previous Annualized Cost | $49,640.07 | |
| FORT DUNCAN REGIONAL MEDICAL CENTER Sum of Future Annualized Cost | Sum of Future Annualized Cost | $52,122.07 | |
| FORT DUNCAN REGIONAL MEDICAL CENTER Sum of Impact Annualized | Sum of Impact Annualized | $2,482.00 | 5.0% |
| GLEN OAKS HOSPITAL 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $491.55 | |
| | Sum of Future Annualized Cost | $516.12 | |
| | Sum of Impact Annualized | $24.58 | 5.0% |
| GLEN OAKS HOSPITAL Sum of Previous Annualized Cost | Sum of Previous Annualized Cost | $491.55 | |
| GLEN OAKS HOSPITAL Sum of Future Annualized Cost | Sum of Future Annualized Cost | $516.12 | |
| GLEN OAKS HOSPITAL Sum of Impact Annualized | Sum of Impact Annualized | $24.58 | 5.0% |
| HAMPTON BEHAVIORAL HEALTH CENTER 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,310.15 | |
| | Sum of Future Annualized Cost | $1,375.65 | |
| | Sum of Impact Annualized | $65.51 | 5.0% |
| HAMPTON BEHAVIORAL HEALTH CENTER Sum of Previous Annualized Cost | Sum of Previous Annualized Cost | $1,310.15 | |
| HAMPTON BEHAVIORAL HEALTH CENTER Sum of Future Annualized Cost | Sum of Future Annualized Cost | $1,375.65 | |
| HAMPTON BEHAVIORAL HEALTH CENTER Sum of Impact Annualized | Sum of Impact Annualized | $65.51 | 5.0% |
| HARTGROVE HOSPITAL 0007526912040 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL VIAL 10ML | Sum of Previous Annualized Cost | $763.91 | |
| | Sum of Future Annualized Cost | $802.10 | |
| | Sum of Impact Annualized | $38.20 | 5.0% |
| HARTGROVE HOSPITAL Sum of Previous Annualized Cost | Sum of Previous Annualized Cost | $761.94 | |
| HARTGROVE HOSPITAL Sum of Future Annualized Cost | Sum of Future Annualized Cost | $800.04 | |
| HARTGROVE HOSPITAL Sum of Impact Annualized | Sum of Impact Annualized | $38.10 | 5.0% |

**UHS**

| Facility / Product | Measure | Value | % |
|---|---|---|---|
| HARTGROVE HOSPITAL | Sum of Previous Annualized Cost | $1,525.85 | |
| HARTGROVE HOSPITAL | Sum of Future Annualized | $1,602.14 | |
| HARTGROVE HOSPITAL | Sum of Impact Annualized | | 5.0% |
| HORSHAM CLINIC | Sum of Previous Annualized Cost | $2,764.22 | |
| HORSHAM CLINIC | Sum of Future Annualized | $2,923.43 | |
| HORSHAM CLINIC | Sum of Impact Annualized | $139.21 | 5.0% |
| HORSHAM CLINIC 00088222033 - LANTUS (INSULIN GLARGINE,HUM REC ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $2,764.22 | |
| | Sum of Future Annualized | $2,923.43 | |
| | Sum of Impact Annualized | $139.21 | 5.0% |
| LAKESIDE BEHAVIORAL HEALTH SYSTEM | Sum of Previous Annualized Cost | $1,474.64 | |
| LAKESIDE BEHAVIORAL HEALTH SYSTEM | Sum of Future Annualized | $1,548.37 | |
| LAKESIDE BEHAVIORAL HEALTH SYSTEM | Sum of Impact Annualized | $73.73 | 5.0% |
| LAKESIDE BEHAVIORAL HEALTH SYSTEM 00088222033 - LANTUS (INSULIN GLARGINE,HUM REC ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,474.64 | |
| | Sum of Future Annualized | $1,548.37 | |
| | Sum of Impact Annualized | $73.73 | 5.0% |
| LAKEWOOD RANCH MEDICAL CENTER | Sum of Previous Annualized Cost | $109,804.07 | |
| LAKEWOOD RANCH MEDICAL CENTER | Sum of Future Annualized | $115,294.27 | |
| LAKEWOOD RANCH MEDICAL CENTER | Sum of Impact Annualized | $5,490.00 | 5.0% |
| LAKEWOOD RANCH MEDICAL CENTER 00088222280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S,AUTO | Sum of Previous Annualized Cost | $29,135.66 | |
| | Sum of Future Annualized | $30,592.44 | |
| | Sum of Impact Annualized | $1,456.78 | 5.0% |
| 00075062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL. DISP SYRIN 12 X 1ML SYRINGE 10'S,AUTO | Sum of Previous Annualized Cost | $26,835.00 | |
| | Sum of Future Annualized | $28,176.75 | |
| | Sum of Impact Annualized | $1,341.75 | 5.0% |
| 00075062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6 mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $25,176.00 | |
| | Sum of Future Annualized | $26,434.78 | |
| | Sum of Impact Annualized | $1,258.80 | 5.0% |
| 00075062430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $15,185.59 | |
| | Sum of Future Annualized | $15,944.87 | |
| | Sum of Impact Annualized | $759.28 | 5.0% |
| 00075062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $10,207.17 | |
| | Sum of Future Annualized | $10,717.53 | |
| | Sum of Impact Annualized | $510.36 | 5.0% |
| 00088222033 - LANTUS (INSULIN GLARGINE,HUM REC ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $3,264.66 | |
| | Sum of Future Annualized | $3,427.89 | |
| | Sum of Impact Annualized | $163.23 | 5.0% |
| LANCASTER COMMUNITY HOSPITAL | Sum of Previous Annualized Cost | $259,980.41 | |
| LANCASTER COMMUNITY HOSPITAL | Sum of Future Annualized | $272,979.43 | |
| LANCASTER COMMUNITY HOSPITAL | Sum of Impact Annualized | $12,999.02 | 5.0% |
| LANCASTER COMMUNITY HOSPITAL 00075062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AUTO | Sum of Previous Annualized Cost | $76,241.97 | |
| | Sum of Future Annualized | $80,054.07 | |
| | Sum of Impact Annualized | $3,812.10 | 5.0% |
| 00075062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6 mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $50,751.72 | |
| | Sum of Future Annualized | $53,289.31 | |
| | Sum of Impact Annualized | $2,537.59 | 5.0% |
| 00075062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $46,982.76 | |
| | Sum of Future Annualized | $49,331.90 | |
| | Sum of Impact Annualized | $2,349.14 | 5.0% |
| 00075062430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $41,154.23 | |
| | Sum of Future Annualized | $43,211.94 | |
| | Sum of Impact Annualized | $2,057.71 | 5.0% |
| 00075062280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $34,871.08 | |
| | Sum of Future Annualized | $36,614.63 | |
| | Sum of Impact Annualized | $1,743.55 | 5.0% |
| 00088222033 - LANTUS (INSULIN GLARGINE,HUM REC ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $9,978.64 | |
| | Sum of Future Annualized | $10,477.58 | |
| | Sum of Impact Annualized | $498.93 | 5.0% |
| MANATEE MEMORIAL HOSPITAL 00075062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AL | Sum of Previous Annualized Cost | $172,978.63 | |
| | Sum of Future Annualized | $123,941.48 | |
| | Sum of Future Annualized | $130,138.56 | |
| | Sum of Impact Annualized | $6,197.07 | 5.0% |

# UHS

| Facility | Product | Measure | Value | % |
|---|---|---|---|---|
| MANATEE MEMORIAL HOSPITAL | 0007506280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 ml DISP SYRIN 12 X 0.8ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $120,376.55 | |
| | | Sum of Future Annualized | $126,395.38 | |
| | | Sum of Impact Annualized | $6,018.83 | 5.0% |
| | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6ml DISP SYRIN 12 X 0.6ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $96,204.39 | |
| | | Sum of Future Annualized | $101,014.61 | |
| | | Sum of Impact Annualized | $4,810.22 | 5.0% |
| | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/1mL DISP SYRIN 12 X 1ML SYRINGE 10'S;AUTO | Sum of Previous Annualized Cost | $60,350.02 | |
| | | Sum of Future Annualized | $63,367.52 | |
| | | Sum of Impact Annualized | $3,017.50 | 5.0% |
| | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $37,024.17 | |
| | | Sum of Future Annualized | $38,875.38 | |
| | | Sum of Impact Annualized | $1,851.21 | 5.0% |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $6,943.19 | |
| | | Sum of Future Annualized | $7,290.35 | |
| | | Sum of Impact Annualized | $347.16 | 5.0% |
| MANATEE MEMORIAL HOSPITAL Sum of Previous Annualized Cost | | | $444,839.81 | |
| MANATEE MEMORIAL HOSPITAL Sum of Future Annualized | | | $467,081.80 | |
| MANATEE MEMORIAL HOSPITAL Sum of Impact Annualized | | | $22,241.99 | 5.0% |
| MCALLEN HEART HOSPITAL | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/1mL DISP SYRIN 12 X 1ML SYRINGE 10'S;AUTO | Sum of Previous Annualized Cost | $75,296.05 | |
| | | Sum of Future Annualized | $79,060.85 | |
| | | Sum of Impact Annualized | $3,764.80 | 5.0% |
| | 0007506280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 ml DISP SYRIN 12 X 0.8ML SYRINGE 10'S;AUTO | Sum of Previous Annualized Cost | $55,867.88 | |
| | | Sum of Future Annualized | $58,661.28 | |
| | | Sum of Impact Annualized | $2,793.39 | 5.0% |
| | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6ml DISP SYRIN 12 X 0.6ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $36,383.90 | |
| | | Sum of Future Annualized | $38,203.09 | |
| | | Sum of Impact Annualized | $1,819.19 | 5.0% |
| | 0007591201 - LOVENOX (ENOXAPARIN SODIUM) 120 mg/0.8 ml DISP SYRIN 12 X 0.8ML SYRINGE P/F;1 | Sum of Previous Annualized Cost | $13,552.44 | |
| | | Sum of Future Annualized | $14,230.06 | |
| | | Sum of Impact Annualized | $677.62 | 5.0% |
| | 0007506240 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $25,644.35 | |
| | | Sum of Future Annualized | $26,926.57 | |
| | | Sum of Impact Annualized | $1,282.22 | 5.0% |
| | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $5,456.81 | |
| | | Sum of Future Annualized | $5,729.65 | |
| | | Sum of Impact Annualized | $272.84 | 5.0% |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $4,034.30 | |
| | | Sum of Future Annualized | $4,236.02 | |
| | | Sum of Impact Annualized | $201.72 | 5.0% |
| MCALLEN HEART HOSPITAL Sum of Previous Annualized Cost | | | $216,235.72 | |
| MCALLEN HEART HOSPITAL Sum of Future Annualized | | | $227,047.51 | |
| MCALLEN HEART HOSPITAL Sum of Impact Annualized | | | $10,811.79 | 5.0% |
| MERIDELL ACHIEVEMENT CENTER | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $491.55 | |
| | | Sum of Future Annualized | $516.12 | |
| | | Sum of Impact Annualized | $24.58 | 5.0% |
| MERIDELL ACHIEVEMENT CENTER Sum of Previous Annualized Cost | | | $491.55 | |
| MERIDELL ACHIEVEMENT CENTER Sum of Future Annualized | | | $516.12 | |
| MERIDELL ACHIEVEMENT CENTER Sum of Impact Annualized | | | $24.58 | 5.0% |
| NORTHERN NEVADA MEDICAL CENTER | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/1mL DISP SYRIN 12 X 1ML SYRINGE 10'S;AUTO | Sum of Previous Annualized Cost | $20,303.55 | |
| | | Sum of Future Annualized | $21,318.73 | |
| | | Sum of Impact Annualized | $1,015.18 | 5.0% |
| | 0007506240 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $34,556.94 | |
| | | Sum of Future Annualized | $36,284.15 | |
| | | Sum of Impact Annualized | $1,727.82 | 5.0% |
| | 0007506280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 ml DISP SYRIN 12 X 0.8ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $46,300.74 | |
| | | Sum of Future Annualized | $48,615.78 | |
| | | Sum of Impact Annualized | $2,315.04 | 5.0% |
| | 0007506230 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6ml DISP SYRIN 12 X 0.6ML SYRINGE 10'S;A | Sum of Previous Annualized Cost | $12,073.31 | |
| | | Sum of Future Annualized | $12,676.97 | |
| | | Sum of Impact Annualized | $603.67 | 5.0% |

UHS

| Entity | Product | Measure | Value | % |
|---|---|---|---|---|
| NORTHERN NEVADA MEDICAL CENTER | 0007506260 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 ml DISP SYRIN 12 X 0.8ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $10,343.15 | 5.0% |
| NORTHERN NEVADA MEDICAL CENTER | | Sum of Future Annualized Cost | $10,860.31 | 5.0% |
| NORTHERN NEVADA MEDICAL CENTER | | Sum of Impact Annualized | $517.16 | 5.0% |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC,ANLOG) 100 unit/ml DISP SYRIN 12 X 0.4ML VIAL 10ML | Sum of Previous Annualized Cost | $2,494.66 | 5.0% |
| | | Sum of Future Annualized Cost | $2,619.39 | 5.0% |
| | | Sum of Impact Annualized | $124.73 | 5.0% |
| NORTHERN NEVADA MEDICAL CENTER Sum of Previous Annualized Cost | | | $126,071.75 | |
| NORTHERN NEVADA MEDICAL CENTER Sum of Future Annualized | | | $132,375.34 | |
| NORTHERN NEVADA MEDICAL CENTER Sum of Impact Annualized | | | $6,303.59 | 5.0% |
| NORTHWEST TEXAS HEALTHCARE SYSTEM | 0007506240 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ml DISP SYRIN 12 X 0.4ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $139,825.97 | 5.0% |
| NORTHWEST TEXAS HEALTHCARE SYSTEM | | Sum of Future Annualized Cost | $146,817.27 | 5.0% |
| NORTHWEST TEXAS HEALTHCARE SYSTEM | | Sum of Impact Annualized | $6,991.30 | 5.0% |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC,ANLOG) 100 unit/ml DISP SYRIN 12 X 0.4ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $59,129.57 | 5.0% |
| | | Sum of Future Annualized Cost | $62,815.69 | |
| | | Sum of Impact Annualized | $2,815.69 | |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC,ANLOG) 100 mg/mL DISP SYRIN 1 2 X 1ML SYRINGE 10'S AUTO | Sum of Previous Annualized Cost | $491.55 | 5.0% |
| | | Sum of Future Annualized Cost | $516.12 | |
| | | Sum of Impact Annualized | $24.58 | |
| NORTHWEST TEXAS HEALTHCARE SYSTEM Sum of Previous Annualized Cost | | | $346,735.94 | 0.0% |
| NORTHWEST TEXAS HEALTHCARE SYSTEM Sum of Future Annualized | | | $364,097.93 | |
| NORTHWEST TEXAS HEALTHCARE SYSTEM Sum of Impact Annualized | | | $17,361.99 | |
| PARKWOOD BEHAVIORAL HEALTH SYSTEM | 0007506240 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3ml DISP SYRIN 12 X 0.3ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $25,573.13 | 5.0% |
| PARKWOOD BEHAVIORAL HEALTH SYSTEM | | Sum of Future Annualized Cost | $26,851.79 | |
| PARKWOOD BEHAVIORAL HEALTH SYSTEM | | Sum of Impact Annualized | $1,278.66 | |
| | 0007506260 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6ml DISP SYRIN 12 X 0.6ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $38,512.96 | 5.0% |
| | | Sum of Future Annualized Cost | $40,438.61 | |
| | | Sum of Impact Annualized | $1,925.65 | |
| PARKWOOD BEHAVIORAL HEALTH SYSTEM | 0007506280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 ml DISP SYRIN 12 X 0.8ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $41,299.95 | 5.0% |
| PARKWOOD BEHAVIORAL HEALTH SYSTEM | | Sum of Future Annualized Cost | $43,364.95 | |
| PARKWOOD BEHAVIORAL HEALTH SYSTEM | | Sum of Impact Annualized | $2,065.00 | |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC,ANLOG) 100 unit/ml CARTRIDGE 5 X 3ML 5'S | Sum of Previous Annualized Cost | $45,234.04 | 5.0% |
| | | Sum of Future Annualized Cost | $47,495.75 | |
| | | Sum of Impact Annualized | $2,261.70 | |
| PEACHFORD BEHAVIORAL HEALTH SYSTEM | 0008222052 - LANTUS (INSULIN GLARGINE,HUM.REC,ANLOG) 100 unit/ml VIAL 10ML | Sum of Previous Annualized Cost | $500.77 | 5.0% |
| PEACHFORD BEHAVIORAL HEALTH SYSTEM | | Sum of Future Annualized Cost | $525.81 | |
| PEACHFORD BEHAVIORAL HEALTH SYSTEM | | Sum of Impact Annualized | $25.04 | |
| PEACHFORD BEHAVIORAL HEALTH SYSTEM Sum of Previous Annualized Cost | | | $1,466.95 | 5.0% |
| PEACHFORD BEHAVIORAL HEALTH SYSTEM Sum of Future Annualized | | | $1,561.30 | |
| PEACHFORD BEHAVIORAL HEALTH SYSTEM Sum of Impact Annualized | | | $74.35 | |
| PEMBROKE HOSPITAL | 0007506240 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ml DISP SYRIN 12 X 0.4ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $2,081.67 | 5.0% |
| PEMBROKE HOSPITAL | | Sum of Future Annualized Cost | $2,185.48 | |
| PEMBROKE HOSPITAL | | Sum of Impact Annualized | $103.12 | |
| | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC,ANLOG) 100 unit/ml VIAL 10ML | Sum of Previous Annualized Cost | $1,966.18 | 5.0% |
| | | Sum of Future Annualized Cost | $2,064.49 | |
| | | Sum of Impact Annualized | $99.31 | |
| PEMBROKE HOSPITAL Sum of Previous Annualized Cost | | | $4,649.43 | 5.0% |
| PEMBROKE HOSPITAL Sum of Future Annualized | | | $4,881.91 | |
| PEMBROKE HOSPITAL Sum of Impact Annualized | | | $232.47 | |
| PROVIDENCE HOSPITAL | 0007506040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4ml DISP SYRIN 12 X 0.4ML SYRINGE 10'S AI | Sum of Previous Annualized Cost | $1,942.72 | 5.0% |
| PROVIDENCE HOSPITAL | | Sum of Future Annualized Cost | $2,039.86 | |
| PROVIDENCE HOSPITAL | | Sum of Impact Annualized | $97.14 | |

4/19/2011

**UHS**

| Facility / Metric | Product | Metric | Cost | % |
|---|---|---|---|---|
| PROVIDENCE HOSPITAL Sum of Previous Annualized Cost | | Sum of Previous Annualized | $1,942.72 | 5.0% |
| PROVIDENCE HOSPITAL Sum of Future Annualized Cost | | Sum of Future Annualized | $2,039.86 | 5.0% |
| PROVIDENCE HOSPITAL Sum of Impact Annualized Cost | | Sum of Impact Annualized | $97.14 | 5.0% |
| RIVENDELL BEHAVIORAL HEALTH SERVICES ARKANSAS Sum of Previous Annualized Cost | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,241.18 | 5.0% |
| RIVENDELL BEHAVIORAL HEALTH SERVICES ARKANSAS Sum of Future Annualized Cost | | Sum of Future Annualized Cost | $1,303.23 | 5.0% |
| RIVENDELL BEHAVIORAL HEALTH SERVICES ARKANSAS Sum of Impact Annualized Cost | | Sum of Impact Annualized | $62.06 | 5.0% |
| RIVER CREST HOSPITAL Sum of Previous Annualized Cost | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,241.18 | 5.0% |
| RIVER CREST HOSPITAL Sum of Future Annualized Cost | | Sum of Future Annualized Cost | $1,303.23 | 5.0% |
| RIVER CREST HOSPITAL Sum of Impact Annualized Cost | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Impact Annualized Cost | $245.77 | 5.0% |
| RIVER CREST HOSPITAL | | | $258.06 | 5.0% |
| RIVER CREST HOSPITAL | | | $72.29 | 5.0% |
| | | | $62.06 | 5.0% |
| RIVER OAKS HOSPITAL Sum of Previous Annualized Cost | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,241.18 | 5.0% |
| RIVER OAKS HOSPITAL Sum of Future Annualized Cost | | Sum of Future Annualized Cost | $1,303.23 | 5.0% |
| RIVER OAKS HOSPITAL Sum of Impact Annualized Cost | | Sum of Impact Annualized | $62.06 | 5.0% |
| ROCKFORD CENTER Sum of Previous Annualized Cost | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $749.63 | 5.0% |
| ROCKFORD CENTER Sum of Future Annualized Cost | | Sum of Future Annualized Cost | $787.11 | 5.0% |
| ROCKFORD CENTER Sum of Impact Annualized Cost | | Sum of Impact Annualized | $37.48 | 5.0% |
| ROCKFORD CENTER Sum of Previous Annualized Cost | | | $749.63 | 5.0% |
| | | | $787.11 | 5.0% |
| | | | $37.46 | 5.0% |
| SOUTH TEXAS BEHAVIORAL HEALTH CENTER Sum of Previous Annualized Cost | 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,241.30 | 5.0% |
| SOUTH TEXAS BEHAVIORAL HEALTH CENTER Sum of Future Annualized Cost | | Sum of Future Annualized Cost | $1,303.36 | 5.0% |
| SOUTH TEXAS BEHAVIORAL HEALTH CENTER Sum of Impact Annualized Cost | | Sum of Impact Annualized | $62.06 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN | 0007062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S AU | Sum of Previous Annualized Cost | $157,139.71 | 5.0% |
| | | Sum of Future Annualized Cost | $164,996.70 | 5.0% |
| | | Sum of Impact Annualized | $7,856.99 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN | 0007062080 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S AU | Sum of Previous Annualized Cost | $76,244.78 | 5.0% |
| | | Sum of Future Annualized Cost | $80,057.02 | 5.0% |
| | | Sum of Impact Annualized | $3,812.24 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN | 0007062030 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3 mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Previous Annualized Cost | $54,906.84 | 5.0% |
| | | Sum of Future Annualized Cost | $57,652.19 | 5.0% |
| | | Sum of Impact Annualized | $2,745.34 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN | 0007062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S AU | Sum of Previous Annualized Cost | $47,075.60 | 5.0% |
| | | Sum of Future Annualized Cost | $49,429.38 | 5.0% |
| | | Sum of Impact Annualized | $2,353.78 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN | 0007062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/1mL DISP SYRIN 12 X 1ML SYRINGE 10'S,AUTO | Sum of Previous Annualized Cost | $46,053.25 | 5.0% |
| | | Sum of Future Annualized Cost | $42,313.96 | 5.0% |
| | | Sum of Impact Annualized | $2,313.96 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN | 0007591501 - LOVENOX (ENOXAPARIN SODIUM) 150 mg/mL DISP SYRIN 12 X 1ML SYRINGE PIF,10'S,AUTO | Sum of Previous Annualized Cost | $17,335.37 | 5.0% |
| | | Sum of Future Annualized Cost | $18,191.63 | 5.0% |
| | | Sum of Impact Annualized | $866.27 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN | 0005291201 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $9,978.64 | 5.0% |
| | | Sum of Future Annualized Cost | $10,477.58 | 5.0% |
| | | Sum of Impact Annualized | $498.93 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN Sum of Previous Annualized Cost | 0005291201 - LOVENOX (ENOXAPARIN SODIUM) 120 mg/0.8 mL DISP SYRINGE PIF,1 | Sum of Previous Annualized Cost | $4,544.37 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN Sum of Future Annualized Cost | | Sum of Future Annualized Cost | $4,771.59 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN Sum of Impact Annualized Cost | | Sum of Impact Annualized | $227.22 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN Sum of Previous Annualized Cost | | | $413,494.60 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN Sum of Future Annualized Cost | | | $434,169.33 | 5.0% |
| SOUTH TEXAS HEALTH SYSTEM - MCALLEN Sum of Impact Annualized Cost | | | $20,674.73 | 5.0% |

# UHS

| Organization - Product | Metric | Value | % |
|---|---|---|---|
| SOUTHWEST HEALTHCARE SYSTEM - 00075062280 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6 mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $64,681.30 | 5.0% |
| | Sum of Future Annualized | $67,915.37 | |
| | Sum of Impact Annualized | $3,234.07 | |
| SOUTHWEST HEALTHCARE SYSTEM - 00075062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $43,975.79 | 5.0% |
| | Sum of Future Annualized | $46,174.57 | |
| | Sum of Impact Annualized | $2,198.79 | |
| SOUTHWEST HEALTHCARE SYSTEM - 00075062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $32,955.70 | 5.0% |
| | Sum of Future Annualized | $34,603.49 | |
| | Sum of Impact Annualized | $1,647.79 | |
| SOUTHWEST HEALTHCARE SYSTEM - 00075062160 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $26,495.79 | 5.0% |
| | Sum of Future Annualized | $27,820.58 | |
| | Sum of Impact Annualized | $1,324.78 | |
| SOUTHWEST HEALTHCARE SYSTEM - 0008220033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $22,645.59 | 5.0% |
| | Sum of Future Annualized | $23,777.87 | |
| | Sum of Impact Annualized | $1,132.28 | |
| SOUTHWEST HEALTHCARE SYSTEM - 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $2,224.27 | 5.0% |
| | Sum of Future Annualized | $2,335.48 | |
| | Sum of Impact Annualized | $111.21 | |
| SOUTHWEST HEALTHCARE SYSTEM - INLAND VALLEY CAMPUS | Sum of Previous Annualized Cost | $192,978.44 | 5.0% |
| | Sum of Future Annualized Cost | $202,627.37 | |
| | Sum of Impact Annualized | $9,648.92 | |
| SOUTHWEST HEALTHCARE SYSTEM - 00075062280 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6 mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $76,190.00 | 5.0% |
| | Sum of Future Annualized | $79,999.50 | |
| | Sum of Impact Annualized | $3,809.50 | |
| SOUTHWEST HEALTHCARE SYSTEM - 00075062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $60,637.46 | 5.0% |
| | Sum of Future Annualized | $63,669.33 | |
| | Sum of Impact Annualized | $3,031.87 | |
| SOUTHWEST HEALTHCARE SYSTEM - 00075062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $29,718.65 | 5.0% |
| | Sum of Future Annualized | $31,204.60 | |
| | Sum of Impact Annualized | $1,485.95 | |
| SOUTHWEST HEALTHCARE SYSTEM - 00075062160 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $26,517.49 | 5.0% |
| | Sum of Future Annualized | $27,843.36 | |
| | Sum of Impact Annualized | $1,325.87 | |
| SOUTHWEST HEALTHCARE SYSTEM - 0008222033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $17,761.73 | 5.0% |
| | Sum of Future Annualized | $18,649.82 | |
| | Sum of Impact Annualized | $888.09 | |
| SOUTHWEST HEALTHCARE SYSTEM - 0008220033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $3,010.83 | 5.0% |
| | Sum of Future Annualized | $3,161.37 | |
| | Sum of Impact Annualized | $150.54 | |
| SOUTHWEST HEALTHCARE SYSTEM - RANCHO SPRINGS CAMPUS | Sum of Previous Annualized Cost | $213,836.46 | 5.0% |
| | Sum of Future Annualized Cost | $224,528.28 | |
| | Sum of Impact Annualized | $10,691.82 | |
| SPRING MOUNTAIN TREATMENT CENTER - 00075062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $2,913.59 | 5.0% |
| | Sum of Future Annualized | $3,059.27 | |
| | Sum of Impact Annualized | $145.68 | |
| SPRING MOUNTAIN TREATMENT CENTER - 0008220033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $1,474.64 | 5.0% |
| | Sum of Future Annualized | $1,548.37 | |
| | Sum of Impact Annualized | $73.73 | |
| SPRING MOUNTAIN TREATMENT CENTER | Sum of Previous Annualized Cost | $4,388.22 | 5.0% |
| | Sum of Future Annualized Cost | $4,607.63 | |
| | Sum of Impact Annualized | $219.41 | |
| ST. MARY'S REGIONAL MEDICAL CENT - 00075062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $60,792.32 | 5.0% |
| | Sum of Future Annualized | $63,831.94 | |
| | Sum of Impact Annualized | $3,039.62 | |
| ST. MARY'S REGIONAL MEDICAL CENT - 00075062160 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $50,548.46 | 5.0% |
| | Sum of Future Annualized | $53,075.86 | |
| | Sum of Impact Annualized | $2,527.42 | |
| ST. MARY'S REGIONAL MEDICAL CENT - 00075062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL D SP SYRIN 12 X 1ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $29,173.43 | 5.0% |
| | Sum of Future Annualized | $30,632.10 | |
| | Sum of Impact Annualized | $1,458.67 | |

**UHS**

| Facility / Product (NDC) | Sum of Previous Annualized Cost | Sum of Future Annualized Cost | Sum of Impact Annualized | % |
|---|---|---|---|---|
| ST. MARY'S REGIONAL MEDICAL CENTER — 0007/5062280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A... | $25,014.54 | $26,265.27 | $1,250.73 | 5.0% |
| 0007/5062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A... | $18,399.37 | $19,319.34 | $938.07 | 5.0% |
| 0008/8220033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | $7,855.89 | $8,038.69 | $382.79 | 5.0% |
| ST. MARY'S REGIONAL MEDICAL CENTER Sum | $191,945.95 | $201,543.25 | $9,597.30 | 5.0% |
| SUMMERLIN HOSPITAL MEDICAL CENTER, LLC d/b/a SUMMERLIN HOSPITAL MEDICAL CENTER, LLC — 0007/5062300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO... | $243,931.19 | $256,127.75 | $12,196.56 | 5.0% |
| 0007/5062430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S A... | $149,044.36 | $156,496.58 | $7,452.22 | 5.0% |
| 0007/5062280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A... | $132,517.67 | $139,143.55 | $6,625.88 | 5.0% |
| 0007/5062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A... | $80,718.18 | $84,741.58 | $4,023.31 | 5.0% |
| 0008/8220033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | $71,893.81 | $75,488.50 | $3,594.69 | 5.0% |
| 0008/8220033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 3ML MULTI USE VIAL | $21,382.68 | $22,451.82 | $1,069.13 | 5.0% |
| SUMMERLIN HOSPITAL MEDICAL CENTER, LLC Sum | $699,475.99 | $734,449.68 | $34,973.79 | 5.0% |
| THE BRIDGEWAY — 0008/8220333 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 3ML MULTI USE VIAL | $2,843.25 | $2,985.41 | $142.16 | 5.0% |
| 0008/8220333 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | $2,728.12 | $2,864.53 | $136.41 | 5.0% |
| THE BRIDGEWAY Sum | $5,571.37 | $5,849.94 | $278.57 | 5.0% |
| THE CAROLINA CENTER FOR BEHAVIORAL HEALTH — 0007/5062040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S A... | $2,236.58 | $2,348.41 | $111.83 | 5.0% |
| 0008/8220333 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | $727.49 | $763.87 | $36.37 | 5.0% |
| THE CAROLINA CENTER FOR BEHAVIORAL HEALTH Sum | $2,964.07 | $3,112.28 | $148.20 | 5.0% |
| THE PAVILION FOUNDATION — 0008/8220033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | $523.87 | $550.06 | $26.19 | 5.0% |
| THE PAVILION FOUNDATION Sum | $523.87 | $550.06 | $26.19 | 5.0% |
| TIMBERLAWN MENTAL HEALTH SYSTEM — 0007/5062160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A... | $3,441.76 | $3,613.87 | $172.09 | 5.0% |

UHS

| Entity | Item | Measure | Amount | % |
|---|---|---|---|---|
| TIMBERLAWN MENTAL HEALTH SYSTEM | 0007500635430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Impact Annualized | $1,718.85 | |
| TIMBERLAWN MENTAL HEALTH SYSTEM | | Sum of Previous Annualized Cost | $1,804.79 | 5.0% |
| TIMBERLAWN MENTAL HEALTH SYSTEM | | Sum of Future Annualized Cost | $85.94 | |
| TIMBERLAWN MENTAL HEALTH SYSTEM | | Sum of Impact Annualized | $737.32 | |
| TIMBERLAWN MENTAL HEALTH SYSTEM | | Sum of Previous Annualized Cost | $774.18 | 5.0% |
| TIMBERLAWN MENTAL HEALTH SYSTEM | | Sum of Impact Annualized | $36.87 | |
| TIMBERLAWN MENTAL HEALTH SYSTEM | | Sum of Previous Annualized Cost | $5,897.95 | |
| TIMBERLAWN MENTAL HEALTH SYSTEM Sum of Previous Annualized Cost | | | $6,192.85 | 5.0% |
| TIMBERLAWN MENTAL HEALTH SYSTEM Sum of Future Annualized Cost | | | $294.90 | |
| TIMBERLAWN MENTAL HEALTH SYSTEM Sum of Impact Annualized | | | $1,980.60 | |
| TWO RIVERS PSYCHIATRIC HOSPITAL Sum of Previous Annualized Cost | | | $2,090.24 | 5.0% |
| TWO RIVERS PSYCHIATRIC HOSPITAL Sum of Future Annualized | | | $109.64 | |
| TWO RIVERS PSYCHIATRIC HOSPITAL Sum of Impact Annualized | | | $545.68 | |
| TWO RIVERS PSYCHIATRIC HOSPITAL | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $572.96 | 5.0% |
| TWO RIVERS PSYCHIATRIC HOSPITAL | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Future Annualized | $27.28 | |
| TWO RIVERS PSYCHIATRIC HOSPITAL | 0007500632430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S A | Sum of Impact Annualized | $2,536.49 | |
| TWO RIVERS PSYCHIATRIC HOSPITAL | 0007500632430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE | Sum of Previous Annualized Cost | $2,663.31 | 5.0% |
| TWO RIVERS PSYCHIATRIC HOSPITAL | | Sum of Impact Annualized | $126.82 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $172,927.32 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Future Annualized Cost | $181,573.69 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Impact Annualized | $8,646.37 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500622300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Previous Annualized Cost | $127,905.13 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500622300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Future Annualized Cost | $134,301.43 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500622300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Impact Annualized | $6,396.31 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A | Sum of Previous Annualized Cost | $93,944.26 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A | Sum of Future Annualized Cost | $98,413.44 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A | Sum of Impact Annualized | $4,469.18 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A | Sum of Previous Annualized Cost | $86,310.76 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A | Sum of Future Annualized Cost | $90,626.40 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A | Sum of Impact Annualized | $4,315.64 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Previous Annualized Cost | $34,705.11 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Future Annualized Cost | $36,440.36 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Impact Annualized | $1,735.28 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S AL | Sum of Previous Annualized Cost | $20,633.05 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S AL | Sum of Future Annualized Cost | $21,664.71 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER | 0007500632040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S AL | Sum of Impact Annualized | $1,031.65 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER Sum of Previous Annualized Cost | | | $531,859.85 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER Sum of Future Annualized Cost | | | $558,452.85 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a DESERT SPRINGS HOSPITAL MEDICAL CENTER Sum of Impact Annualized | | | $26,592.99 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $157,358.66 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Future Annualized Cost | $165,226.59 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0008220233 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Impact Annualized | $7,867.93 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500622300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Previous Annualized Cost | $103,338.70 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500622300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Future Annualized Cost | $108,505.64 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500622300 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S AU | Sum of Impact Annualized | $5,166.94 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A | Sum of Previous Annualized Cost | $97,315.90 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A | Sum of Future Annualized Cost | $102,179.07 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S A | Sum of Impact Annualized | $4,865.67 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A | Sum of Previous Annualized Cost | $66,626.65 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A | Sum of Future Annualized Cost | $69,958.30 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S A | Sum of Impact Annualized | $3,331.35 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Previous Annualized Cost | $61,841.74 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Future Annualized Cost | $64,933.83 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632280 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S AUTO | Sum of Impact Annualized | $3,092.09 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S AL | Sum of Previous Annualized Cost | $5,493.18 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S AL | Sum of Future Annualized Cost | $5,767.84 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER | 0007500632040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S AL | Sum of Impact Annualized | $274.66 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER Sum of Previous Annualized Cost | | | $491,972.62 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER Sum of Future Annualized Cost | | | $516,571.26 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER Sum of Impact Annualized | | | $24,598.63 | |

# UHS

| Entity | Item | Measure | Value | % |
|---|---|---|---|---|
| VALLEY HEALTH SYSTEM, LLC d/b/a VAl | 0007506/2040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $228,835.86 | |
| | | Sum of Future Annualized Cost | $240,277.66 | |
| | | Sum of Impact Annualized | $11,441.79 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a VAl | 0007506/2280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8 mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $210,870.14 | |
| | | Sum of Future Annualized Cost | $221,413.65 | |
| | | Sum of Impact Annualized | $10,543.51 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a VAl | 0007506/2300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S,AUTO | Sum of Previous Annualized Cost | $168,252.43 | |
| | | Sum of Future Annualized Cost | $176,565.06 | |
| | | Sum of Impact Annualized | $8,312.62 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a VAl | 0007506/2160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $97,133.03 | |
| | | Sum of Future Annualized Cost | $101,989.68 | |
| | | Sum of Impact Annualized | $4,856.65 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a VAl | 0007506/2430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $57,950.92 | |
| | | Sum of Future Annualized Cost | $60,848.46 | |
| | | Sum of Impact Annualized | $2,897.55 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a VAl | 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $38,058.75 | |
| | | Sum of Future Annualized Cost | $39,961.69 | |
| | | Sum of Impact Annualized | $1,902.94 | 5.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a VAl | 0008822052 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL CARTRIDGE 5 X 3ML 5'S | Sum of Previous Annualized Cost | $0.00 | |
| | | Sum of Future Annualized Cost | $0.00 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| VALLEY HEALTH SYSTEM, LLC d/b/a VALLEY HOSPITAL MEDICAL CENTER | | Sum of Previous Annualized Cost | $799,101.13 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a VALLEY HOSPITAL MEDICAL CENTER | | Sum of Future Annualized Cost | $839,056.16 | |
| VALLEY HEALTH SYSTEM, LLC d/b/a VALLEY HOSPITAL MEDICAL CENTER | | Sum of Impact Annualized Cost | $39,955.03 | 5.0% |
| WELLINGTON REGIONAL MEDICAL CENTER | 0007506/2300 - LOVENOX (ENOXAPARIN SODIUM) 100 mg/mL DISP SYRIN 12 X 1ML SYRINGE 10'S,AU | Sum of Previous Annualized Cost | $49,937.33 | |
| | | Sum of Future Annualized Cost | $52,434.20 | |
| | | Sum of Impact Annualized | $2,496.87 | 5.0% |
| WELLINGTON REGIONAL MEDICAL CENTER | 0007506/2430 - LOVENOX (ENOXAPARIN SODIUM) 30 mg/0.3mL DISP SYRIN 12 X 0.3ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $27,443.56 | |
| | | Sum of Future Annualized Cost | $28,815.74 | |
| | | Sum of Impact Annualized | $1,372.18 | 5.0% |
| WELLINGTON REGIONAL MEDICAL CENTER | 0007506/2160 - LOVENOX (ENOXAPARIN SODIUM) 60 mg/0.6mL DISP SYRIN 12 X 0.6ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $25,845.01 | |
| | | Sum of Future Annualized Cost | $27,137.26 | |
| | | Sum of Impact Annualized | $1,292.25 | 5.0% |
| WELLINGTON REGIONAL MEDICAL CENTER | 0007506/2280 - LOVENOX (ENOXAPARIN SODIUM) 80 mg/0.8mL DISP SYRIN 12 X 0.8ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $20,280.05 | |
| | | Sum of Future Annualized Cost | $21,294.06 | |
| | | Sum of Impact Annualized | $1,014.00 | 5.0% |
| WELLINGTON REGIONAL MEDICAL CENTER | 0007506/2040 - LOVENOX (ENOXAPARIN SODIUM) 40 mg/0.4mL DISP SYRIN 12 X 0.4ML SYRINGE 10'S,AI | Sum of Previous Annualized Cost | $5,290.51 | |
| | | Sum of Future Annualized Cost | $5,555.04 | |
| | | Sum of Impact Annualized | $264.53 | 5.0% |
| WELLINGTON REGIONAL MEDICAL CENTER | 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $2,236.58 | |
| | | Sum of Future Annualized Cost | $2,348.41 | |
| | | Sum of Impact Annualized | $111.83 | 5.0% |
| WELLINGTON REGIONAL MEDICAL CENTER | | Sum of Previous Annualized Cost | $131,033.05 | |
| WELLINGTON REGIONAL MEDICAL CENTER | | Sum of Future Annualized Cost | $137,584.70 | |
| WELLINGTON REGIONAL MEDICAL CENTER | | Sum of Impact Annualized | $6,551.65 | 5.0% |
| WESTWOOD LODGE HOSPITAL | 0008822033 - LANTUS (INSULIN GLARGINE,HUM.REC.ANLOG) 100 unit/mL VIAL 10ML | Sum of Previous Annualized Cost | $3,527.00 | |
| | | Sum of Future Annualized Cost | $3,703.35 | |
| | | Sum of Impact Annualized | $176.35 | 5.0% |
| WESTWOOD LODGE HOSPITAL | | Sum of Previous Annualized Cost | $3,527.00 | |
| WESTWOOD LODGE HOSPITAL | | Sum of Future Annualized Cost | $3,703.35 | |
| WESTWOOD LODGE HOSPITAL | | Sum of Impact Annualized | $176.35 | 5.0% |
| Total Sum of Previous Annualized | | | $7,261,253.34 | |
| Total Sum of Future Annualized Cost | | | $7,624,316.01 | |
| Total Sum of Impact Annualized | | | $363,062.67 | 5.0% |

**UHS**
**Broadliane Impact Analysis**
Data Dates

**SANOFI AVENTIS JANUARY IMPACT**
10/25/2006 to 1/23/2007

SET PRINT AREA BEFORE YOU PRINT

| COT | | | | |
|---|---|---|---|---|
| Name | NDC_Desc | (All) | | |
| | | Data | Total | % Impact |
| AIKEN REGIONAL MEDICAL CENTER | | Sum of Previous Annualized Cost | $200,204.26 | |
| | | Sum of Future Annualized Cost | $202,925.73 | |
| | | Sum of Impact Annualized | $2,721.47 | 1.4% |
| ANCHOR HOSPITAL | 00310027439 - SEROQUEL (QUETIAPINE FUMARATE) 300 mg TABLET  100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $28,857.16 | |
| | | Sum of Future Annualized Cost | $30,589.09 | |
| | | Sum of Impact Annualized | $1,733.93 | 6.0% |
| | 00310027139 - SEROQUEL (QUETIAPINE FUMARATE) 100 mg TABLET  100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $14,000.03 | |
| | | Sum of Future Annualized Cost | $14,839.73 | |
| | | Sum of Impact Annualized | $839.69 | 6.0% |
| | 00310027910 - SEROQUEL (QUETIAPINE FUMARATE) 400 MG TABLET 100 CT BOTTLE | Sum of Previous Annualized Cost | $13,565.83 | |
| | | Sum of Future Annualized Cost | $14,379.86 | |
| | | Sum of Impact Annualized | $814.03 | 6.0% |
| | 00310027839 - SEROQUEL (QUETIAPINE FUMARATE) 50 mg TABLET 100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $8,937.49 | |
| | | Sum of Future Annualized Cost | $9,473.87 | |
| | | Sum of Impact Annualized | $536.38 | 6.0% |
| | 00310027239 - SEROQUEL (QUETIAPINE FUMARATE) 200 mg TABLET 100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $8,803.55 | |
| | | Sum of Future Annualized Cost | $9,331.91 | |
| | | Sum of Impact Annualized | $528.35 | 6.0% |
| | 00310027710 - SEROQUEL (QUETIAPINE FUMARATE)  100 ct BOTTLE | Sum of Previous Annualized Cost | $6,602.67 | |
| | | Sum of Future Annualized Cost | $6,998.93 | |
| | | Sum of Impact Annualized | $396.27 | 6.0% |
| | 00310027539 - SEROQUEL (QUETIAPINE FUMARATE) 25 mg TABLET 100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $2,039.69 | |
| | | Sum of Future Annualized Cost | $2,162.25 | |
| | | Sum of Impact Annualized | $122.55 | 6.0% |
| ANCHOR HOSPITAL Sum of Previous Annualized Cost | | | $82,806.42 | |
| ANCHOR HOSPITAL Sum of Future Annualized Cost | | | $87,775.41 | |
| ANCHOR HOSPITAL Sum of Impact Annualized | | | $4,968.99 | |
| AUBURN GENERAL HOSPITAL | 00310027139 - SEROQUEL (QUETIAPINE FUMARATE) 100 mg TABLET  100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $10,500.02 | |
| | | Sum of Future Annualized Cost | $11,129.80 | |
| | | Sum of Impact Annualized | $629.77 | 6.0% |
| | 00310027639 - SEROQUEL (QUETIAPINE FUMARATE) 25 mg TABLET 100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $9,519.54 | |
| | | Sum of Future Annualized Cost | $10,089.48 | |
| | | Sum of Impact Annualized | $570.94 | 6.0% |
| | 00310020130 - ARIMIDEX (ANASTROZOLE) 1 mg TABLET 30 ct BOTTLE | Sum of Previous Annualized Cost | $975.86 | |
| | | Sum of Future Annualized Cost | $928.48 | |
| | | Sum of Impact Annualized | $52.61 | 6.0% |
| | 00186109039 - TOPROL XL (METOPROLOL SUCCINATE) 50 mg  AB.SR.24H 100 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $1,490.92 | |
| | | Sum of Future Annualized Cost | $1,543.05 | |
| | | Sum of Impact Annualized | $52.13 | 3.5% |
| | 00310032520 - MERREM (MEROPENEM) 500 mg VAL 10 ct | Sum of Previous Annualized Cost | $44,020.78 | |
| | | Sum of Future Annualized Cost | $44,020.78 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| AUBURN GENERAL HOSPITAL Sum of Previous Annualized Cost | | | $66,406.12 | |
| AUBURN GENERAL HOSPITAL Sum of Future Annualized Cost | | | $67,711.58 | |
| AUBURN GENERAL HOSPITAL Sum of Impact Annualized | | | $1,305.46 | 2.0% |
| CENTRAL MONTGOMERY MEDICAL CEN | 00186189804 - PULMICORT (BUDESONIDE) 0.5 mg/2 mL AMPUL-NEB  30 X 2ML AMPUL/KIT  UD | Sum of Previous Annualized Cost | $1,710.06 | |
| | | Sum of Future Annualized Cost | $1,812.92 | |
| | | Sum of Impact Annualized | $102.86 | 6.0% |
| | 00310020130 - ARIMIDEX (ANASTROZOLE) 1 mg TABLET 30 ct BOTTLE | Sum of Previous Annualized Cost | $975.86 | |
| | | Sum of Future Annualized Cost | $928.48 | |
| | | Sum of Impact Annualized | $52.61 | 6.0% |
| | 00310075639 - CASODEX (BICALUTAMIDE) 50 mg TABLET  30 ct BLIST PACK  UD | Sum of Previous Annualized Cost | $1,617.63 | |
| | | Sum of Future Annualized Cost | $1,666.20 | |
| | | Sum of Impact Annualized | $48.56 | 3.0% |

# UHS

| Entity / Product | Measure | Sum of Previous Annualized Cost | Sum of Future Annualized | Sum of Impact Annualized | % |
|---|---|---|---|---|---|
| CENTRAL MONTGOMERY MEDICAL CEN — 00186108039 - TOPROL XL (METOPROLOL SUCCINATE) 50 mg TAB SR 24H 100 ct BLIST PACK UD | Previous / Future / Impact | $1,192.73 | $1,234.44 | $41.70 | 3.5% |
| 00186108839 - TOPROL XL (METOPROLOL SUCCINATE) 25 mg TAB SR 24H 100 ct BLIST PACK UD | Previous / Future / Impact | $679.90 | $720.68 | $40.78 | 6.0% |
| 00310032520 - MERREM (MEROPENEM) 500 mg VIAL 10 ct | Previous / Future / Impact | $894.85 | $931.28 | $36.43 | 3.5% |
| 00310032130 - MERREM (MEROPENEM) 1 g VIAL 10 ct | Previous / Future / Impact | $863.15 | $863.15 | $0.00 | 0.0% |
|  | Previous / Future / Impact | $6,905.22 | $6,905.22 | $0.00 | 0.0% |
| CENTRAL MONTGOMERY MEDICAL CENTER Sum of Previous / Future / Impact Annualized Cost | | $14,739.12 | $15,056.91 | $317.79 | 2.2% |
| DEL AMO HOSPITAL — 00310027939 - SEROQUEL (QUETIAPINE FUMARATE) 400 mg TABLET 100 ct BLIST PACK | Previous / Future / Impact | $44,088.95 | $46,734.55 | $2,645.60 | 6.0% |
| 00310027439 - SEROQUEL (QUETIAPINE FUMARATE) 400 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $23,005.73 | $24,471.27 | $1,385.54 | 6.0% |
| 00310027139 - SEROQUEL (QUETIAPINE FUMARATE) 300 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $10,350.02 | $11,129.50 | $629.77 | 6.0% |
| 00310027910 - SEROQUEL (QUETIAPINE FUMARATE) 100 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $3,391.45 | $3,594.97 | $203.51 | 6.0% |
| 00310027539 - SEROQUEL (QUETIAPINE FUMARATE) 400 MG TABLET 100 CT BOTTLE | Previous / Future / Impact | $2,039.69 | $2,162.03 | $122.35 | 6.0% |
| 00180091542 - SEROQUEL (QUETIAPINE FUMARATE) 25 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $563.12 | $585.62 | $22.50 | 4.0% |
| PULMICORT (BUDESONIDE) 200 mcg/inhalation AER POW BA 1 ct CANISTER 200 DOSES | Previous / Future / Impact | — | — | — | — |
| DEL AMO HOSPITAL Sum of Previous / Future / Impact Annualized Cost | | $83,668.97 | $88,678.22 | $5,009.25 | 6.0% |
| DISTRICT HOSPITAL PARTNERS, LP d/b/a — 00310027539 - SEROQUEL (QUETIAPINE FUMARATE) 25 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $13,205.33 | $13,987.87 | $782.54 | 6.0% |
| 00310027139 - SEROQUEL (QUETIAPINE FUMARATE) 100 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $9,518.54 | — | $570.94 | 6.0% |
| 00310027439 - SEROQUEL (QUETIAPINE FUMARATE) 300 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $8,166.69 | $8,656.51 | $489.82 | 6.0% |
| 00310027439 - SEROQUEL (QUETIAPINE FUMARATE) 200 mg TABLET 100 ct BLIST PACK UD | Previous / Future / Impact | $2,885.72 | $3,058.91 | $173.19 | 6.0% |
| 00186198804 - PULMICORT (BUDESONIDE) 0.5 mg/2 mL AMPUL-NEB 30 X 2ML BLIST PACK 30'S/U-D UD | Previous / Future / Impact | $2,280.09 | $2,417.23 | $137.14 | 6.0% |
| 00186198804 - PULMICORT (BUDESONIDE) 0.25 mg/2 mL AMPUL-NEB 30 X 2ML AMPUL/KIT UD | Previous / Future / Impact | $4,102.39 | $4,225.90 | $123.51 | 3.0% |
| 00186109039 - TOPROL XL (METOPROLOL SUCCINATE) 50 mg TAB SR 24H 100 ct BLIST PACK UD | Previous / Future / Impact | $3,280.02 | $3,394.71 | $114.69 | 3.5% |

## UHS

### DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL

| Code | Description | Sum of Previous Annualized Cost | Sum of Future Annualized | Sum of Impact Annualized | % |
|---|---|---|---|---|---|
| 0031:0075:139 | CRESTOR (ROSUVASTATIN CALCIUM) 10 mg TABLET 100 ct BLIST PACK UD COATED U... | $2,252.50 | $2,342.48 | $89.98 | 4.0% |
| 00186091542 | PULMICORT (BUDESONIDE) 200 mcg/Inhalation AER POW BA 1 ct CANISTER 200 DOSES | $1,051.94 | $1,104.59 | $52.65 | 5.0% |
| 0031:0020:130 | ARIMIDEX (ANASTROZOLE) 1 mg TABLET 30 ct BOTTLE | $875.86 | $928.48 | $52.61 | 6.0% |
| 00186108639 | TOPROL XL (METOPROLOL SUCCINATE) 25 mg TAB SR 24H 100 ct BLIST PACK UD | $1,490.92 | $1,543.05 | $52.13 | 3.5% |
| 0031:0075:539 | CASODEX (BICALUTAMIDE) 50 mg TABLET 30 ct BLIST PACK U | $1,617.68 | $1,666.20 | $48.52 | 3.0% |
| 00186109239 | TOPROL XL (METOPROLOL SUCCINATE) 100 mg TAB SR 24H 100 ct BLIST PACK UD | $896.07 | $927.63 | $31.36 | 3.5% |
| 00186045058 | PLENDIL (FELODIPINE) 2.5 mg TAB SR 24H 100 ct BOTTLE | $482.96 | $502.33 | $19.37 | 4.0% |
| 00186108805 | TOPROL XL (METOPROLOL SUCCINATE) 25 mg TAB SR 24H 100 ct BOTTLE | $298.18 | $308.61 | $10.43 | 3.5% |
| 0031:0032:130 | MERREM (MEROPENEM) 1 g VIAL 10 ct | $3,452.61 | $3,452.61 | $0.00 | 0.0% |

DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL Sum of Previous Annualized Cost  $55,867.46
DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL Sum of Future Annualized  $58,616.38
DISTRICT HOSPITAL PARTNERS, LP d/b/a GEORGE WASHINGTON UNIVERSITY HOSPITAL Sum of Impact Annualized Cost  $2,768.92

### DOCTORS HOSPITAL OF LAREDO

| Code | Description | Sum of Previous Annualized Cost | Sum of Future Annualized | Sum of Impact Annualized | % |
|---|---|---|---|---|---|
| 00186198804 | PULMICORT (BUDESONIDE) 0.5 mg/2 mL AMPUL-NEB 30 X 2ML AMPUL-KIT UD | $5,040.22 | $5,383.07 | $342.85 | 6.8% |
| 0031:0027:539 | SEROQUEL (QUETIAPINE FUMARATE) 25 mg TABLET 100 ct BLIST PACK UD | $3,399.48 | $3,603.39 | $203.91 | 6.0% |
| 0031:0072050 | FASLODEX (FULVESTRANT) 250 mg/5 mL DISP S*RIN 5ML SYRINGE | $15,771.93 | $15,929.73 | $157.79 | 1.0% |
| 00186198804 | PULMICORT (BUDESONIDE) 0.25 mg/2 mL AMPUL-NEB 30 X 2ML BLIST PACK 30'S U-D UD | $5,127.99 | $5,282.37 | $154.39 | 3.0% |
| 00186091542 | PULMICORT (BUDESONIDE) 200 mcg/Inhalation AER POW BA 1 ct CANISTER 200 DOSES | $3,378.75 | $3,513.72 | $134.98 | 4.0% |
| 0031:0075:539 | CRESTOR (ROSUVASTATIN CALCIUM) 10 mg TABLET 100 ct BLIST PACK UD COATED U... | $2,103.89 | $2,209.19 | $105.30 | 5.0% |
| 0031:0027:139 | SEROQUEL (QUETIAPINE FUMARATE) 100 mg TABLET 100 ct BLIST PACK UD | $1,496.67 | $1,586.64 | $89.97 | 6.0% |
| 0031:0020:130 | ARIMIDEX (ANASTROZOLE) 1 mg TABLET 30 ct BOTTLE | $875.86 | $928.48 | $52.61 | 6.0% |
| 00186107008 | RHINOCORT AQUA (BUDESONIDE) 32 mcg/Actuat on SPRAY 8.6GM CANISTER 120 METE... | $832.96 | $874.70 | $41.74 | 5.0% |
| 00186107008 | RHINOCORT AQUA (BUDESONIDE) 32 mcg/Actuat on SPRAY 6.8GM CANISTER 120 METE... | $1,192.73 | $1,234.44 | $41.70 | 3.5% |

**UHS**

| Provider | NDC – Product | Metric | Value | % |
|---|---|---|---|---|
| DOCTOR'S HOSPITAL OF LAREDO | 00186108839 - ZOMIG (ZOLMITRIPTAN) 2.5 mg TABLET 6 ct BOTTLE BLISTER PACK | Sum of Previous Annualized Cost | $1,192.73 | |
| | | Sum of Future Annualized | $1,234.44 | |
| | | Sum of Impact Annualized | $41.70 | 3.5% |
| | 00310021020 - ZOMIG (ZOLMITRIPTAN) 2.5 mg TABLET 6 ct BOTTLE BLISTER PACK | Sum of Previous Annualized Cost | $370.48 | |
| | | Sum of Future Annualized | $389.05 | |
| | | Sum of Impact Annualized | $18.57 | 5.0% |
| | 00186109239 - TOPROL XL (METOPROLOL SUCCINATE) 100 mg TAB SR 24H 100 ct BLIST PACK UD | Sum of Previous Annualized Cost | $448.04 | |
| | | Sum of Future Annualized | $463.72 | |
| | | Sum of Impact Annualized | $15.68 | 3.5% |
| | 00186001631 - ATACAND (CANDESARTAN CILEXETIL) 16 mg TABLET 30 ct BOTTLE  U-U | Sum of Previous Annualized Cost | $168.18 | |
| | | Sum of Future Annualized | $176.60 | |
| | | Sum of Impact Annualized | $8.42 | 5.0% |
| | 00310032520 - MERREM (MEROPENEM) 500 mg VIAL  10 ct | Sum of Previous Annualized Cost | $72,504.81 | |
| | | Sum of Future Annualized | $72,504.81 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| | 00310032130 - MERREM (MEROPENEM) 1 g VIAL  10 ct | Sum of Previous Annualized Cost | $24,168.27 | |
| | | Sum of Future Annualized | $24,168.27 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| DOCTOR'S HOSPITAL OF LAREDO | | Sum of Previous Annualized Cost | $138,402.98 | |
| DOCTOR'S HOSPITAL OF LAREDO | | Sum of Future Annualized Cost | $139,792.61 | |
| DOCTOR'S HOSPITAL OF LAREDO | | Sum of Impact Annualized | $1,389.63 | 1.0% |
| EDINBURG REGIONAL MEDICAL CENTER | 00186108004 - PULMICORT (BUDESONIDE) 0.5 mg/2 mL AMPUL-NEB 30 X 2ML AMPUL/KIT UD | Sum of Previous Annualized Cost | $20,520.77 | |
| | | Sum of Future Annualized | $21,755.05 | |
| | | Sum of Impact Annualized | $1,234.75 | 6.0% |
| | 00310027139 - SEROQUEL (QUETIAPINE FUMARATE) 100 mg TABLET 100 ct BLIST PACK UD | Sum of Previous Annualized Cost | $20,824.75 | |
| | | Sum of Future Annualized | $21,657.73 | |
| | | Sum of Impact Annualized | $832.98 | 4.0% |
| | (SEROQUEL QUETIAPINE FUMARATE) | Sum of Previous Annualized Cost | $1,166.67 | |
| | | Sum of Future Annualized | $1,236.64 | |
| | | Sum of Impact Annualized | $69.97 | 6.0% |
| | 00186109039 - TOPROL XL (METOPROLOL SUCCINATE) 50 mg TAB SR 24H 100 ct BLIST PACK UD | Sum of Previous Annualized Cost | $894.55 | |
| | | Sum of Future Annualized | $925.83 | |
| | | Sum of Impact Annualized | $31.28 | 3.5% |
| | 00186108839 - TOPROL XL (METOPROLOL SUCCINATE) 25 mg TAB SR 24H 100 ct BLIST PACK UD | Sum of Previous Annualized Cost | $894.55 | |
| | | Sum of Future Annualized | $925.83 | |
| | | Sum of Impact Annualized | $31.28 | 3.5% |
| | 00186109239 - TOPROL XL (METOPROLOL SUCCINATE) 100 mg TAB SR 24H 100 ct BLIST PACK UD | Sum of Previous Annualized Cost | $448.04 | |
| | | Sum of Future Annualized | $463.72 | |
| | | Sum of Impact Annualized | $15.68 | 3.5% |
| | 00186000031 - ATACAND (CANDESARTAN CILEXETIL) 8 mg TABLET 30 ct BOTTLE   U-U | Sum of Previous Annualized Cost | $168.18 | |
| | | Sum of Future Annualized | $176.60 | |
| | | Sum of Impact Annualized | $8.42 | 5.0% |
| | 00186001651 - ATACAND (CANDESARTAN CILEXETIL) 16 mg TABLET 90 ct BOTTLE | Sum of Previous Annualized Cost | $0.00 | |
| | | Sum of Future Annualized | $0.00 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| | 00310032520 - MERREM (MEROPENEM) 500 mg VIAL  10 ct | Sum of Previous Annualized Cost | $10,357.83 | |
| | | Sum of Future Annualized | $10,357.83 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| | 00310070539 - CASODEX (BICALUTAMIDE) 50 mg TABLET 30 ct BLIST PACK UD | Sum of Previous Annualized Cost | $0.00 | |
| | | Sum of Future Annualized | $0.00 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| | 00310032130 - MERREM (MEROPENEM) 1 g VIAL  10 ct | Sum of Previous Annualized Cost | $36,252.41 | |
| | | Sum of Future Annualized | $36,252.41 | |
| | | Sum of Impact Annualized | $0.00 | 0.0% |
| EDINBURG REGIONAL MEDICAL CENTER | | Sum of Previous Annualized Cost | $91,727.75 | |
| EDINBURG REGIONAL MEDICAL CENTER | | Sum of Future Annualized Cost | $93,751.63 | |
| EDINBURG REGIONAL MEDICAL CENTER | | Sum of Impact Annualized | $2,023.89 | 2.2% |
| FAIRMOUNT BEHAVIORAL HEALTH SYSTEM | 00310027439 - SEROQUEL (QUETIAPINE FUMARATE) 300 mg TABLET 100 ct BLIST PACK UD | Sum of Previous Annualized Cost | $46,171.46 | |
| | | Sum of Future Annualized | $48,942.53 | |
| | | Sum of Impact Annualized | $2,771.07 | 6.0% |